| | |
|---|---|
| 1 | EDMUND G. BROWN JR.<br>Attorney General of the State of California |
| 2 | STEVEN M. GEVERCER<br>Supervising Deputy Attorney General |
| 3 | CATHERINE WOODBRIDGE GUESS, State Bar No. 186186<br>Deputy Attorney General |
| 4 | 1300 I Street, Suite 125<br>P.O. Box 944255 |
| 5 | Sacramento, CA 94244-2550<br>Telephone: (916) 445-8216 |
| 6 | Fax: (916) 322-8288<br>Email: Catherine.Woodbridge@doj.ca.gov |
| 7 | |
| 8 | Attorneys for Defendants Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D. |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| NYLES LAWAYNE WATSON,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>D. K. SISTO, et al.,<br><br>　　　　　　　　　　　Defendants. | CIV-S-07-1871 LKK GGH P<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF CATHERINE GUESS** |

TO PLAINTIFF NYLES WATSON in Pro Se:

PLEASE TAKE NOTICE that defendants Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D. will and hereby do move the Court for summary judgment. The motion is brought pursuant to Federal Rules of Civil Procedure, Rule 56 and Local Rule 78-230(m). The motion is made on the grounds that there is no evidence to support a finding that defendants were deliberately indifferent to plaintiff's medical needs. As a result, there are no triable issues of fact and defendants Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D. are entitled to judgment, as a matter of law.

The motion is based upon this Notice and the attached Memorandum of Points and Authorities; the Separate Statement of Undisputed Facts; the Declarations of Catherine Guess, Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D., plaintiff's responses to discovery, accompanying exhibits and upon all pleadings and documents on file herein. Defendant may also offer such additional evidence as may be necessary in reply to any opposition.

DATED:

Respectfully Submitted,

EDWARD R. BROWN JR.
Attorney General of the State of California
STEVEN M. GEVERCER
Supervising Deputy Attorney General


/s/ *Catherine Woodbridge Guess*
_____
CATHERINE WOODBRIDGE GUESS
Deputy Attorney General

Attorneys for Defendants Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff is a prisoner currently incarcerated at California State Prison Solano. He brings this civil rights action under 42 U.S.C. section 1983 for alleged deliberate indifference to medical needs. Specifically, plaintiff contends that after he was declared a surgical candidate in 2004, he was denied lumbar surgery requiring placement of titanium discs. In addition, plaintiff contends he was denied physical therapy for his low back condition. Plaintiff seeks compensatory and punitive damages against Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Binoye Naku, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D. for inadequate medical treatment.

There is no evidence that defendants were deliberately indifferent to plaintiff's medical needs. The medical treatment and care defendants provided was consistent with community standards. At no time did defendants refuse medical treatment to plaintiff which they believed he needed. At no time were defendants advised that plaintiff needed lumbar surgery requiring titanium discs. In fact, none of plaintiff's neurosurgeons recommend lumbar surgery at this time. Instead, the treatment recommended is pain medications, physical therapy and epidural injections.

Plaintiff received and continues to receive constant and consistent care for his chronic low back pain. Plaintiff's treatment for his back condition includes MRI studies in 2003, 2005 and 2008; referrals for neurosurgery, neurology and rheumotology; evaluations by two neurosurgeons and a neurologist; multiple epidural injections; physical therapy; and the pain medications Methodone and Neurontin.

## II.

## PROCEDURAL HISTORY

Plaintiff's complaint was filed September 10, 2007. The complaint alleges Warden Sisto, Dr. Noriega, Dr. Naku, Dr. Traquina, Dr. Tan and Dr. Rohrer were deliberately indifferent to his medical needs. By order dated, January 17, 2008, this action was allowed to proceed

against Warden Sisto, Dr. Noriega, Dr. Naku, Dr. Traquina, Dr. Tan and Dr. Rohrer.

## III.

## STATEMENT OF UNDISPUTED FACTS

Defendants Jason Rohrer, M.D., Richard Tan, M.D., Alfredo Noriega, M.D. and Alvaro Traquina, M.D. are licensed medical doctors in good standing with the California Medical Board. (Separate Statement of Undisputed Facts, hereinafter UDF, No. 1). At all times relevant to this action, Jason Rohrer, M.D., Richard Tan, M.D. and Alfredo Noriega, M.D. were employed by the California Department of Corrections and Rehabilitation as medical doctors working at California State Prison- Solano (CSP-Solano). (UDF No. 2). In the same time period, Alvaro Traquina, M.D. was employed by the California Department of Corrections and Rehabilitation as Chief Medical Officer (CMO) working at CSP-Solano. (UDF No. 3); and Dennis K. Sisto was employed by the California Department of Corrections and Rehabilitation as a warden working at CSP-Solano. (UDF No. 4).

On February 24, 2003, plaintiff underwent an MRI of the lumbar spine. (UDF No. 5). The impression was mild spondylitis changes primarily at L5-S1 and minimally at L4-5; small posterior central annual tear at L4-5; small left neural foramina/paracentral disk protrusion at L4-5; moderate-sized, broad-based, predominately posterior centra/left paracentral disk protrusion at L5-S1 with narrowing of the lateral recess on the left. (UDF No. 6). On March 15, 2003, Dr. Kofoed referred plaintiff for neurosurgery evaluation to determine if plaintiff was a surgical candidate. (UDF No. 7).

On June 16, 2004, plaintiff was seen by Dr. Farr, a neurosurgeon at Doctor's Hospital in Manetca. (UDF No. 8). Dr. Farr noted that plaintiff had degenerative disc disease at L4-5 and severe degenerative disc disease at L5-S1. (UDF No. 9). Dr. Farr recommended pain management and epidural injections. (UDF No. 10). Dr. Farr also opined that if the injections were not effective at pain relief, a discogram should be ordered. (UDF No. 11). Dr. Farr did not indicate plaintiff was a surgical candidate for his lumbar spine or required titanium discs for his lumbar condition. (UDF No. 12).

On September 17, 2004, Dr. Rohrer saw plaintiff as a patient in the medical clinic for follow up after neurosurgical referral. (UDF No. 13). Dr. Rohrer ordered a soft shoe chrono and epidural injections per Dr. Farr's recommendations and increased plaintiff's dosage of Methadone for pain. (UDF No. 14).

On December 14, 2004, plaintiff was seen by Dr. Solomon for lumbar degenerative disc disease. (UDF No. 15). His medications were renewed and it was noted plaintiff was waiting for epidural injections. (UDF No. 16).

Plaintiff was seen by Dr. Tan on January 13, 2005, for low back pain. (UDF No. 17). Dr. Tan noted that plaintiff has degenerative disc disease at L4-5 and disc protrusion at L5-S1 and was waiting for epidural injections. (UDF No. 18). Dr. Tan also referred plaintiff to physical therapy. (UDF No. 19).

On January 14, 2005 and January 25, 2005, plaintiff received epidural injections. (UDF No. 20). Plaintiff was seen January 31, 2005, February 22, 2005 and March 2, 2005, for follow up care regarding his low back. (UDF No. 21). At no time was his Methadone dosage discontinued. (UDF No. 22).

On April 1, 2005, plaintiff failed to show for a scheduled MRI of the low back. (UDF No. 23).

On May 19, 2005, plaintiff was seen by neurologist Dr. Mitchell who noted plaintiff has chronic low back pain and sciatica down the leg left greater than right. (UDF No. 24). Dr. Mitchell also noted that the epidural injections resulted in some improvement. (UDF No. 25).

Plaintiff underwent a lumbar MRI on August 16, 2005, at Vacaville Imaging. (UDF No. 26). The impression was disc dessication, disc bulges, and facet joint arthropathy primarily at L5-S1 and also at L4-5; bilateral neural foramina disc protrusions and neural foramina narrowing L4-5, left more than right; bilateral neural foramina and posterior central disc protrusions at L5-S1. (UDF No. 27).

Plaintiff was seen for follow up regarding his low back on June 3, 2005, August 31, 2005 and September 19, 2005. (UDF No. 28). At no time was his Methadone dosage decreased or discontinued. (UDF No. 29).

On November 18, 2005, Dr. Naku saw plaintiff for low back pain and administered a Demerol shot. (UDF No. 30).

Plaintiff was seen for continued care for his low back on March 15, 2006, April 10, 2006 and July 7, 2006. (UDF No. 31).

On August 25, 2006, Dr. Rohrer saw plaintiff for evaluation of low back pain secondary to degenerative disc disease. (UDF No. 32). At that time, plaintiff requested an increase in Methadone dosage, physical therapy, titanium discs for his lumbar spine and epidural injections. (UDF No. 33). There was no medical indication that plaintiff required titanium discs for his lumbar spine. (UDF No. 34). Based on Dr. Rohrer's examination and findings, he referred plaintiff for physical therapy and a series of three epidural injections and added a new medication to his treatment plan: Neurontin. (UDF No. 35). Plaintiff was still on Methadone. (UDF No. 36). At no time did Dr. Rohrer discontinue his Methadone prescription. (UDF No. 37).

Dr. Rohrer saw plaintiff again on October 6, 2006 for chronic back pain secondary to degenerative disc disease. (UDF No. 38). Dr. Rohrer noted at that time that he was seen on September 12, 2006, for physical therapy and that the referral for epidural injections was pending. (UDF No. 39).

Dr. Tan saw plaintiff on December 6, 2006, for evaluation of ADA mobility impairment based on his chronic low back complaint. (UDF No. 40). Plaintiff was issued chronos for a low bunk and a cane and referred for neurosurgery consult. (UDF No. 41). In addition, his Methadone prescription was renewed. (UDF No. 42).

On April 7, 2007, Dr. Rallos saw plaintiff for complaints of constipation and chronic low back pain. (UDF No. 43). Constipation is a common side effect from opiate medication and plaintiff was taking opiate medication. (UDF No. 44). Plaintiff's medications were renewed by Dr. Rallos. (UDF No. 4.54).

On May 18, 2007, Dr. Rohrer saw plaintiff for low back pain secondary to degenerative disc disease. (UDF No. 46). He referred plaintiff for MRI, specifically noting that plaintiff needed an open MRI because of claims of claustrophobia. (UDF No. 47). In addition, Dr.

Rohrer referred plaintiff for a neurosurgery evaluation for his chronic low back pain and rheumotology evaluation to evaluate rheumatoid arthritis as a cause of low back complaints. (UDF No. 48). There was no indication based on the examination that plaintiff's condition was emergent and required immediate hospitalization or surgery. (UDF No. 49).

On June 24, 2007, plaintiff signed a refusal for MRI test because he claimed he was claustrophobic and would only submit to open MRI. (UDF No. 50). Plaintiff's prior MRI in 2003 was not an open MRI. (UDF No. 51).

CSP Solano has access to MRI and CT testing on site. (UDF No. 52). However, an open MRI requires that inmates be transported off site as that technology is not available at CSP Solano. (UDF No. 53).

On July 5, 2007, Dr. Hsieh also referred plaintiff to rheumotology for evaluation for his low back complaints. (UDF No. 54). Dr. Hsieh noted that plaintiff refused his neurosurgical appointment on May 15, 2007. (UDF No. 55).

On August 2, 2007, plaintiff underwent lumbar MRI at Vacaville Imagining. (UDF No. 56). The impression was mild changes of spondylosis with variable disc bulges and an equivocal superimposed thin central and left intraforaminal protrusion at L4-5, however, no significant central stenosis; variable foraminal narrowing most notably at L4-5 bilaterally and on the left at L5-S1. (UDF No. 57). Between the previous study on August 16, 2005, the changes of spondylosis and the degrees of foraminal encroachment are similar. (UDF No. 58). The small protrusion at L4-5 has not appreciably changed. (UDF No. 59).

On September 21, 2007, Nurse Practioner Mahon noted that plaintiff failed to show for his epidural injection. (UDF No. 60). Plaintiff was advised that failure to show for another epidural appointment would result in no future appointments for that treatment being scheduled. (UDF No. 61).

On October 4, 2007, Dr. Tan again referred plaintiff for neurosurgery evaluation for chronic low back pain and renewed plaintiff's medications, including Methadone. (UDF No. 62).

On November 1, 2007, plaintiff was seen by Dr. Hsieh for complaints of chronic low

1  back pain. (UDF No. 63). Dr. Hsieh noted that plaintiff was referred for neurosurgery
2  evaluation by Dr. Tan on October 4th. (UDF No. 64). In addition, Dr. Hsieh reviewed plaintiff's
3  medication log and noted that there was no change in the Methadone dosage by any treating
4  physician, including Dr. Tan. (UDF No. 65).
5      On February 1, 2008, Dr. Hsieh saw plaintiff for complaints of chronic low back pain.
6  (UDF No. 66). Plaintiff's medications were renewed as were his chronos and it is noted that
7  plaintiff is waiting for neurosurgical evaluation. (UDF No. 67).
8      On May 12, 2008, plaintiff was seen by neurosurgeon, Dr. Jason Huffman, at Queen of
9  the Valley Hospital in Napa. (UDF No. 68). Dr. Huffman noted that plaintiff has a history of
10 low back pain which is mechanical in nature. (UDF No. 69). Epidural injections proved
11 effective. (UDF No. 70). Dr. Huffman recommended conservative treatment including
12 continuation of pain medications and also physical therapy and epidural injections. (UDF No.
13 71). Dr. Huffman opined that if plaintiff failed to respond to physical therapy, then surgery
14 should be considered, however, he noted that surgery has a 70% success rate and that it will not
15 eliminate plaintiff's pain complaints. (UDF No. 72).
16     On May 12, 2008, Dr. Chen referred plaintiff for physical therapy per Dr. Huffman's
17 recommendation and renewed plaintiff's Methadone prescription. (UDF No. 73). Dr. Chen saw
18 plaintiff on June 25, 2008, for complaints of low back pain and noted that plaintiff's pain is
19 controlled with current medications and therefore renewed the current medications of Methadone
20 and Neurontin. (UDF No. 74).
21     Plaintiff was scheduled for a rheumotology consultation on August 21, 2008, at UC
22 Davis Medical Center, but plaintiff refused this consultation claiming that he was claustrophobic
23 and would not agree to be transported. (UDF No. 75).
24     On September 13, 2008, plaintiff was seen in physical therapy. (UDF No. 76). The
25 charting noted that he has good rehabilitation potential and appears motivated to learn. (UDF
26 No. 77). Plaintiff was seen again in physical therapy on September 18, 2008 and October 8,
27 2008 with the findings that plaintiff has relief from pain with proper posture and body mechanics
28 training. (UDF No. 78).

Notice and Motion for Summary Judgment

Plaintiff has degenerative disc disease of the lumbar spine, a common occurrence for a person plaintiff's age (mid 50s). (UDF No. 79). Plaintiff's suffers chronic low back pain, but there are no physical examination findings or diagnostic studies that indicate his low back pain is an emergent condition requiring immediate surgery. (UDF No. 80).

At no time did Dr. Rohrer ever refuse to provide an examination, care or treatment to plaintiff. (UDF No. 81). At no time did Dr. Rohrer intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF No. 82). At no time did Dr. Rohrer deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 83).

At no time did Dr. Tan ever refuse to provide an examination, care or treatment to plaintiff. (UDF No. 84). At no time did Dr. Tan intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF No. 85). At no time did Dr. Tan deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 86).

At no time did Dr. Noriega refuse to provide an examination, care or treatment to plaintiff. (UDF No. 87). At no time did Dr. Noriega intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF No. 88). At no time did Dr. Noriega deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 89).

As CMO, Dr. Traquina's primary job duties are administrative. (UDF No. 90). Prior to this litigation, Dr. Traquina was not personally involved in plaintiff's medical treatment or care. (UDF No. 91). Instead, Dr. Traquina performed administrative reviews of plaintiff's appeals regarding medical issues and reviewed at the second level plaintiff's inmate appeals Nos. CSP-S-05-02351, CSP-S-06-02687, CSP-S-06-03732. (UDF No. 92).

At the request of this court, Dr. Traquina recently reviewed plaintiff's medical file, spoke with the treating physicians and amended plaintiff's medical chronos. (UDF No. 93). This amendment was completed around October 10, 2008. (UDF No. 94).

At no time did Dr. Traquina refuse to provide an examination, care or treatment to plaintiff. (UDF No. 95). Instead, his only role was to review at the second level plaintiff's inmate appeal Nos. CSP-S-05-02351, CSP-S-06-02687, CSP-S-06-03732. (UDF No. 92). Based on Dr. Traquina's review of the appeals presented by plaintiff, he received proper medical

care and was not denied treatment or care. (UDF No. 96). At no time did Dr. Traquina intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF No. 97). At no time did Dr. Traquina deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 98).

Warden Sisto is not a medical doctor and did not provide care or treatment to inmates. (UDF No. 99). As warden, he is not involved in the medical treatment or care provided to inmates. (UDF No. 100).

At no time did Warden Sisto refuse to provide plaintiff with medical treatment or care he believe plaintiff needed. (UDF No. 101). At no time did Warden Sisto intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF No. 102). At no time did Warden Sisto deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 103).

## IV.

## LEGAL STANDARD

**A.   Summary Judgment Is Proper Where There Are No Triable Issues Of Fact.**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

Notice and Motion for Summary Judgment
10

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(c); *Matsushita*, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might effect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). Inferences cannot be drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224 ,1244-1245 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902, (9th Cir. 1987). The opposing party "must do more than simply show there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### B. A Deliberate Indifference Claim Requires Evidence Supporting: 1) Serious Medical Need and 2) An Official's Knowledge and Disregarding Excessive Risk to Health or Safety.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble* 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan* 511 U.S. 825, 834 (1994) citing *Wilson v. Seiter* 501 US 294, 298 (1991). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837. A prison

Notice and Motion for Summary Judgment

official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories* 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle,* 429 U.S. 97, 105-106. Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer,* 511 U.S. at 835, quoting *Whitley* v. *Albers* 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106; see also *Anderson v. County of Kern* 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin v. Smith* 974 F.2d 1050 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller* 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *Wood v. Housewright,* 900 F.2d 1332, 1334 (9th Cir. 1990).

Likewise, mere delay in providing treatment will not constitute deliberate indifference if the delay itself does not lead to injury. *Shapley v. Nevada Bd. of State Prison Comm'rs.,* 766 F.2d 404, 407 (9th Cir. 1986). Plaintiff must establish that the delay was harmful. *Berry v. Bunnell,* 39 F.3d 1056, 1057 (9th Cir. 1994); *McGuckin,* 974 F.2d at 1059; *Wood,* 900 F.2d at 1335; *Hunt v. Dental Dept.* 865 F.2d 198, 200 (9th Cir. 1989). Plaintiff cannot prevail on a 1983 claim where the quality of treatment is subject to dispute. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Id.*

///

///

V.

## ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT

In this case, summary judgment is proper because there is no evidence of deliberate indifference by defendants to plaintiff's chronic back condition. The undisputed evidence establishes plaintiff received constant and consistent care for his low back pain, including MRI studies in 2003, 2005 and 2008; neurosurgery, neurology and rheumotology referrals; neurosurgical evaluation; neurology evaluation; multiple epidural injections; physical therapy; and pain medications including Methodone and Neurontin. (UDF Nos. 5-22, 24-47, 54-59, 62-74). The undisputed evidence also establishes that plaintiff failed to comply with treatment recommendations. (UDF Nos. 23, 50, 60, 75). He refused MRI appointments claiming claustrophobia. (UDF Nos. 23, 50). Of note, plaintiff previously underwent MRI studies without any claustrophobia issues. (UDF No. 51). Plaintiff also failed to keep referral appointments with specialists, including epidural injections and a rheumotology appointment. (UDF Nos. 60, 75).

There is no evidence that any neurosurgeon recommended titanium disc placement for plaintiff's lumbar complaints. Instead, plaintiff's neurosurgeons recommended conservative care. (UDF Nos. 10, 11, 71). Plaintiff's suffers chronic low back pain, but there are no physical examination findings or diagnostic studies that indicate his low back pain is an emergent condition requiring immediate surgery. (UDF No. 80). Plaintiff's disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez,* 891 F.2d at 242.

There is no evidence that defendants decreased or discontinued plaintiff's Methadone dosage. (UDF Nos. 14, 22, 29, 37, 42, 62, 65, 67). The undisputed evidence establishes that defendants treated plaintiff consistent with neurosurgeons' recommendations. (UDF Nos. 10 14, 18, 19, 20, 42, 46, 48, 62). Plaintiff failed to present any evidence that defendants knew of and disregarded a serious risk to his health or safety. *Farmer,* 511 U.S. at 834, 837. As a result, summary judgment should be granted. *Celotex,* 477 U.S. at 322.

### A. Summary Judgment Is Proper Because There Is No Evidence of Deliberate Indifference By Dr. Rohrer.

Dr. Rohrer consistently followed recommendations by plaintiff's neurosurgeons regarding treatment for plaintiff's chronic back pain. On September 17, 2004, Dr. Rohrer ordered epidural injections per Dr. Farr's June 16th recommendations. (UDF Nos. 10, 14). In addition, Dr. Rohrer prescribed soft shoes and increased plaintiff's dosage of Methadone for pain. (UDF No. 14). On August 25, 2006, Dr. Rohrer referred plaintiff for physical therapy and a series of three epidural injections and added a new medication to his treatment plan: Neurontin. (UDF No. 35). On May 18, 2007, Dr. Rohrer referred plaintiff for MRI, specifically noting that plaintiff needed an open MRI because of claims of claustrophobia. (UDF No. 46). In addition, Dr. Rohrer referred plaintiff for neurosurgery evaluation for his chronic low back pain and rheumotology to evaluate rheumatoid arthritis as a cause of low back complaints. (UDF No. 48).

At no time did Dr. Rohrer refuse to provide an examination, care or treatment to plaintiff nor did he intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF Nos. 81, 82). It is undisputed that Dr. Rohrer did not deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 83). Accordingly, summary judgment is proper.

### B. Summary Judgment Is Proper Because There Is No Evidence of Deliberate Indifference By Dr. Tan.

Dr. Tan treated plaintiff for his chronic low back pain in a manner consistent with recommendations from plaintiff's neurosurgeons. On January 13, 2005, Dr. Tan referred plaintiff to physical therapy and noted that plaintiff was waiting for epidural injections. (UDF Nos. 18, 19). The injections were administered January 14, 2005 and January 25, 2005. (UDF No. 20).

On December 6, 2006, Dr. Tan evaluated plaintiff for ADA mobility impairment based on his chronic low back complaint. (UDF No. 40). Dr. Tan issued plaintiff chronos for a low bunk and a cane and referred plaintiff for another neurosurgery consultation. (UDF No. 41) In addition, Dr. Tan renewed plaintiff's Methadone prescription. (UDF No. 42). Again on October 4, 2007, Dr. Tan referred plaintiff for neurosurgery evaluation for chronic low back pain

and renewed plaintiff's medications, including Methadone. (UDF No. 62).

Dr. Tan did not refuse to provide an examination, care or treatment to plaintiff nor did he intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF Nos. 84, 85). Dr. Tan was not deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 85). As a result, summary judgment is proper.

### C. Summary Judgment Is Proper Because By Dr. Noriega Was Not Involved in Plaintiff's Medical Care.

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. In this case, there is no evidence that Dr. Noriega was personally involved with plaintiff's medical care. (UDF Nos. 5-86). Dr. Noriega did not refuse examination, care or treatment to plaintiff. (UDF No. 87). Dr. Noriega did not intentionally or knowingly cause plaintiff to suffer any pain, injury or harm. (UDF No. 88). It is also undisputed that Dr. Noriega did not deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 89). Accordingly, summary judgment is proper.

### D. Summary Judgment Is Proper Because Dr. Traquina Had No Personal Involvement in Plaintiff's Medical Care.

Summary judgment is proper because there is no evidence of deliberate indifference to plaintiff's medical needs on the part of Dr. Traquina. As CMO, Dr. Traquina's involvement in this case is limited to an administrative review of plaintiff's complaints regarding his medical care. (UDF No. 92). A supervisor may be liable under section 1983 only if there exists either "'(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) [quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)]; *see also MacKinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995); *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).

In this case, there is no evidence that Dr. Traquina had any personal involvement in plaintiff's medical treatment giving rise to this action. Likewise, there is no evidence of any

1  causal connection between Dr. Traquina's alleged wrongful conduct and the constitutional
2  violation. A prison official does not act in a deliberately indifferent manner unless the official
3  "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.
4  It is undisputed that Dr. Traquina did not refuse to provide an examination, care or
5  treatment to plaintiff. (UDF No. 95). Likewise, Dr. Traquina did not intentionally or knowingly
6  cause plaintiff to suffer any pain, injury or harm. (UDF No. 97). Finally, Dr. Traquina did not
7  deliberately disregard any serious risk of harm or injury to plaintiff. (UDF No. 98). As a result,
8  plaintiff cannot prevail on a 1983 claim against Dr. Traquina. *Redman,* 942 F.2d at 1446;
9  *Hansen,* 885 F.2d at 646; *MacKinney,* 69 F.3d at 1008; *Jeffers,* 267 F.3d at 915.

### E. Summary Judgment Is Proper Because Warden Sisto Had No Personal Involvement in Plaintiff's Medical Care.

12  In this case, there is no evidence that Warden Sisto had any personal involvement
13  in plaintiff's medical treatment. A prison official does not act in a deliberately indifferent
14  manner unless the official "knows of and disregards an excessive risk to inmate health or safety."
15  *Farmer,* 511 U.S. at 837. Likewise, there is no evidence of any causal connection between
16  Warden Sisto's alleged wrongful conduct and the constitutional violation. *Redman,* 942 F.2d at
17  1446; *Hansen,* 885 F.2d at 646; *MacKinney,* 69 F.3d at 1008; *Jeffers,* 267 F.3d at 915.
18  The undisputed evidence establishes that Warden Sisto did not refuse to provide
19  plaintiff with medical treatment or care he believe plaintiff needed nor did he intentionally or
20  knowingly cause plaintiff to suffer any pain, injury or harm. (UDF Nos. 101, 102). Likewise,
21  Warden Sisto did not deliberately disregard any serious risk of harm or injury to plaintiff. (UDF
22  No. 103). Accordingly, summary judgment is proper.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

# VI.

# CONCLUSION

Based on the foregoing, defendants Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D. respectfully request the court grant summary judgment in their favor.

Dated: November 18, 2008

    Respectfully submitted,
    EDMUND G. BROWN JR.
    Attorney General of the State of California
    STEVEN M. GEVERCER
    Supervising Deputy Attorney General


*/s/ Catherine Woodbridge Guess*
CATHERINE WOODBRIDGE GUESS
Deputy Attorney General
Attorneys for Defendants

# DECLARATION OF CATHERINE W. GUESS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, Catherine W. Guess, hereby declare:

1. I am a Deputy Attorney General with the California Department of Justice attorneys for defendants Jason Rohrer, M.D., Alfredo Noriega, M.D., Richard Tan, M.D., Dennis K. Sisto and Alvaro C. Traquina, M.D. herein.

2. Attached to the Separate Statement of Undisputed Facts as Exhibit A is the Declaration of Jason Rohrer.

3. Attached to the Separate Statement of Undisputed Facts as Exhibit B is the Declaration of Richard Tan, M.D.

4. Attached to the Separate Statement of Undisputed Facts as Exhibit C is the Declaration of Alfredo Noriega.

5. Attached to the Separate Statement of Undisputed Facts as Exhibit D is the Declaration of Alvaro Traquina.

8. Attached to the Separate Statement of Undisputed Facts as Exhibit E is the Declaration of Dennis Sisto.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 18th day of November, 2008 in Sacramento, California.

_____
Catherine W. Guess