IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NYLES LAWAYNE WATSON,

    Plaintiff,                         No. 2:07-cv-01871 LKK KJN P

    vs.

D.K. SISTO et al.,

    Defendants.                        <u>ORDER</u> and

_____/       <u>FINDINGS AND RECOMMENDATIONS</u>

    Plaintiff is a state prisoner proceeding in forma pauperis and with appointed counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983. Presently pending for decision by this court is defendants' motion to dismiss plaintiff's First Amended Complaint and related matters. These matters were heard before the former magistrate judge on August 13, 2009, and was assigned to the undersigned magistrate judge on February 9, 2010.[1]

I. <u>INTRODUCTION</u>

    Plaintiff Nyles Lawayne Watson filed this action in the United States District Court for the Northern District of California on August 28, 2007. The case was transferred to the

_____

    [1] This action is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local General Order No. 262, and E.D. Cal. L.R. ("Local Rule") 302. The undersigned magistrate judge has reviewed the audio recording of the August 13, 2009 hearing held before the former magistrate judge.

1

1   Eastern District of California on September 10, 2007.  On June 15, 2009, with leave of court,

2   plaintiff filed the operative First Amended Complaint ("FAC" or "complaint").  (Dkt. No. 65.)

3           The FAC alleges three legal claims against eight defendants.  After motions to

4   dismiss were filed by defendant Naku (Dkt. No. 67), and the other defendants (Dkt. No. 66),

5   plaintiff voluntarily dismissed some claims, as well as all claims against defendants Naku and

6   Noriega (Dkt. Nos. 74, 81 and 82).  As now framed, plaintiff's FAC alleges:  (1) deliberate

7   indifference to plaintiff's serious medical needs, constituting cruel or unusual punishment in

8   violation of the Eighth Amendment, against former California State Prison-Solano ("CSP-S")

9   Warden D.K. Sisto, CSP-S physician and Chief Medical Officer ("CMO") Traquina, and CSP-S

10  physicians Tan and Rohrer; (2) retaliation for filing administrative grievances in violation of the

11  First Amendment, against CSP-S physicians Traquina and Tan; and (3) discrimination in

12  violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act,

13  against the California Department of Corrections and Rehabilitation ("CDCR"), CSP-S, and

14  Warden Sisto and CMO Traquina in their official capacities.  (FAC, at pp. 18-21.)[2]

15          Plaintiff seeks the following relief:  compensatory and punitive damages; costs

16  and fees; permanent injunctive relief restraining defendants from further constitutional violations

17  against plaintiff, requiring the establishment of means to prevent future violations, and requiring

18  defendants to provide plaintiff with adequate medical care; and the retention of jurisdiction until

19  such time that defendants have complied with the orders of this court and demonstrated a

20  reasonable certainty of future compliance.  (FAC, at pp. 21-22.)

21  II.  <u>PLAINTIFF'S FACTUAL ALLEGATIONS</u>

22          Plaintiff contends that, "[f]rom 2002 through and including the present day, [he]

23  has received constitutionally inadequate medical care" for his lower back condition while

24  incarcerated at CSP-S.  (FAC, at ¶ 19.)  Regarding the period prior to 2002, when plaintiff was

25  _____

26      [2]  Page references to filed documents refer to the court's electronically-created pagination.

2

1 incarcerated at CSP-Sacramento ("SCP-SAC"), plaintiff makes the following factual allegations:

2 On May 12, 1998, plaintiff strained his back (id. at ¶ 20); he was prescribed ibuprofen and taught

3 leg exercises to loosen his back muscles (id.); on June 25, 1998, a physician ordered x-rays of

4 plaintiff's lumbar spine (the results are not noted) (id. at ¶ 21); on August 7, 1998, a physician

5 noted that plaintiff had re-injured his lower back and that he had a strain at his L5 disc (id.); on

6 September 7, 1999, plaintiff complained of lower back pain after twisting his back while getting

7 out of bed and notified a physician that his back had been hurting for years (id. at ¶ 22); and on

8 December 22, 2000, plaintiff complained of chronic lower back pain (id. at ¶ 23).

9         Plaintiff was transferred to CSP-S on October 2, 2001, and alleges that he stated at

10 his initial health interview that he suffered from back pain.  (Id. at ¶ 24.)  Plaintiff states that his

11 medical records were timely transferred from CSP-SAC.  (Id.)  On July 26, 2002, plaintiff was

12 examined for back pain at CSP-S by defendant physician (later CMO) Traquina, who prescribed

13 naproxen.  (Id. at ¶ 25.)  On September 24, 2002, plaintiff filed an administrative grievance

14 alleging inadequate medical care for his lower back pain.  (Id. at ¶ 26.)  X-rays were taken on

15 October 23, 2002.  Traquinia subsequently diagnosed plaintiff with degenerative disc disease,

16 ordered an orthopedic consultation and a back brace, and instructed plaintiff to return in four

17 weeks.  (Id. at ¶ 27.)  Plaintiff was examined by an orthopedic specialist, Dr. Kofoed, on

18 November 30, 2002, who prescribed methadone and ordered an MRI.  (Id. at ¶ 29.)  On January

19 7, 2003, Dr. Traquina ordered a neurology consultation, which was obtained on January 28,

20 2003.  (Id. at ¶¶ 30, 31.)

21         An MRI was conducted on February 24, 2003, which revealed marked disc

22 dessication, disc space narrowing, and disc bulging at the L5-S1 level, and minimal disc

23 desiccation and bulging at L4-5.  (Id. at ¶ 32.)  Plaintiff alleges that these findings reflected

24 "Modic Type 1" changes at L5-S1, presenting a higher likelihood of surgical success at that time

25 than would later be possible after further deterioration of plaintiff's lumbar spine.  (Id. at ¶ 32.)

26 Plaintiff filed an administrative grievance on March 24, 2003, alleging that he was in constant

1    pain and needed to see a surgeon.  (Id. at ¶ 35.)  Plaintiff states that on April 19, 2003, he was

2    "granted ADA status" and a medical chrono was issued noting that plaintiff was not capable of

3    prolonged standing, walking or sitting for longer than thirty minutes.  (Id. at ¶ 35.)  On May 13,

4    2003, plaintiff requested a transfer to California Medical Facility ("CMF") as a "reasonable

5    accommodation" in order to obtain therapy and surgery.  (Id. at ¶ 38.)

6                On March 15, 2003, orthopedist Dr. Kofoed referred plaintiff to a neurosurgeon to

7    evaluate whether he was a surgical candidate.  (Id. at ¶ 34.)  However, six months later, when

8    outpatient services attempted to schedule the neurosurgery consultation, the February 2003 MRI

9    had become outdated.  (Id. at ¶ 41.)  Plaintiff was again referred for an MRI, which was

10   conducted on April 8, 2004, showing significant deterioration since the last MRI, classifiable as

11   "Modic Type 2" changes less correctable by surgery and at a higher degree of risk.  (Id. at ¶¶ 47,

12   50.)  Plaintiff was seen by another orthopedist specializing in spinal surgery (Dr. Farr) on June

13   16, 2004, who recommended pain management and epidural injections.  (Id. at ¶ 54.)

14               Meanwhile, plaintiff was referred to physical therapy on February 26, 2003.  (Id.

15   at ¶ 33.)  However, the referral was not implemented until May 24, 2004, fifteen months later, at

16   which point plaintiff claims it was less effective than it would have been had he earlier received

17   physical therapy.  (Id. at ¶ 52.)

18               Plaintiff sought to expedite his care by a letter written October 19, 2003, to the

19   Chief Medical Officer, and by filing administrative grievances on February 19, 2004, March 23,

20   2004, and April 28, 2004.  (Id. at ¶¶ 42, 48, 49, 51.)  Both Dr. Traquina and Dr. Tan signed

21   "chronos" limiting plaintiff's activities (id. at ¶¶ 44, 45), but both allegedly inadequately failed to

22   timely implement plaintiff's referrals for specialized care (see generally, id., at ¶¶ 25-53).

23               Plaintiff was seen by Dr. Noriega and Dr. Rohrer in July 2004, but allegedly

24   neither sought to implement the June 2004 recommendations of Dr. Farr.  (Id. at ¶ 55.)  Plaintiff

25   filed an administrative grievance on September 2, 2004, seeking implementation of Dr. Farr's

26   recommendations.  (Id. at ¶ 56.)  Thereafter, Dr. Rohrer examined plaintiff and ordered epidural

injections, and Dr. Noriega granted plaintiff's grievance, but plaintiff did not begin receiving epidural injections until January 14, 2005.  (Id. at ¶ 57-61.)

A new MRI was ordered on January 31, 2005, but not obtained until August 16, 2005.  (Id. at ¶¶ 62, 66.)  Despite an August 2005 medical appraisal which plaintiff alleges stated that he needed to be referred to a neurosurgeon, Dr. Noriega examined plaintiff in September and December 2005 without making such a referral.  (Id. at ¶ 67, 69.)

Plaintiff was treated by Dr. Naku from November 2005 to June 2006, by Dr. Tan in May 2006, and by Dr. Rohrer in July and August 2006, without any of these physicians making further referrals.  (Id. at ¶¶ 70, 71.)  Plaintiff filed administrative grievances in August 2005 and August 2006.  (Id. at ¶ 65, 73.)  Plaintiff was again seen by Dr. Tan in December 2006 who referred him for further evaluation by Dr. Farr in May 2007.  (Id. at ¶ 74.)  Plaintiff filed another administrative grievance in December 2006.  (Id. at ¶ 75.)  Plaintiff was seen by Dr. Tan in March 2007, and by Dr. Rohrer in May 2007, and finally scheduled for his fourth MRI on August 2, 2007.  (Id. at ¶ 76-80.)

Plaintiff filed his initial complaint in this action on August 28, 2007, alleging that his back impairment grew more severe since 2002 due to defendants' lack of adequate care, resulting in irreversible damage to his spine and chronic pain that is now less amenable to surgical intervention.

On September 27, 2007, Dr. Tan rescinded plaintiff's prescription for methadone pending further medical assessment.  (Id. at ¶ 82.)  Dr. Tan examined plaintiff on October 4, 2007.  Plaintiff filed administrative grievances on October 2 and 4, 2007.  (Id. at ¶¶ 82, 83.)

On May 12, 2008, plaintiff was seen by Dr. Huffman, an orthopedic surgeon specializing in spinal surgery.  (Id. at ¶ 86.)  Dr. Huffman recommended a regimen of physical therapy, pain medication and epidural injections, with a follow-up appointment in three months to evaluate for surgery, but advised plaintiff that there was only a 70% chance that surgery would be successful and it would not eliminate plaintiff's pain.  (Id.)  Plaintiff did not commence

1    physical therapy until September 13, 2008, and did not receive a follow-up appointment with Dr.

2    Huffman.  (Id. at ¶ at 96, 98.)

3              Meanwhile, in May and June 2008, plaintiff filed three administrative grievances

4    alleging that medical staff was making him wait excessively long to receive his medications, in

5    violation of chronos reflecting plaintiff's limitations in sitting, standing and walking.  (Id. at ¶

6    87-89.) "On June 25, 2008, Dr. Chen issued a chrono stating that Watson was to receive his

7    narcotic medication after his diabetic medication and that he was not to be subjected to

8    prolonged walking, sitting, or standing for more than 30 minutes."  (Id., at ¶ 90.)  Thereafter,

9    "[o]n October 9, 2008 . . . Dr. Traquina issued a new chrono for Watson, replacing the chrono

10   that Dr. Chen had issued . . . removed the direction allowing Watson to obtain his narcotic

11   medication after his diabetic medication and replaced the direction referring to no prolonged

12   standing, sitting, or walking for greater than 30 minutes with a direction omitting the restriction

13   on prolonged sitting."  (Id. at ¶ 97.)

14   III.  DISCUSSION

15        A.  LEGAL STANDARDS FOR MOTION TO DISMISS

16             A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

17   challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

18   Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

19   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

20   plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see

21   also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

22   motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

23   to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

24   1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).  "'A claim

25   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26   reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v.

1   Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S.Ct. at

2   1949).  The court accepts "all facts alleged as true and construes them in the light most favorable

3   to the plaintiff."  County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241 n.1 (9th Cir.

4   2009).  The court is "not, however, required to accept as true conclusory allegations that are

5   contradicted by documents referred to in the complaint, and [the court does] not necessarily

6   assume the truth of legal conclusions merely because they are cast in the form of factual

7   allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).

8             In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

9   generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

10  and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of

11  Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However,

12  under the "incorporation by reference" doctrine, a court may also review documents "whose

13  contents are alleged in a complaint and whose authenticity no party questions, but which are not

14  physically attached to the [plaintiff's] pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

15  Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

16  doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

17  document, the defendant attaches the document to its motion to dismiss, and the parties do not

18  dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

19  contents of that document in the complaint."  Id.

20       B.  CLAIMS PURSUANT TO 42 U.S.C. § 1983

21            1.  INJUNCTIVE RELIEF

22            As set forth in his "Prayer for Relief," plaintiff seeks the following injunctive and

23  equitable relief (FAC, at p. 21):

24            (a)  Issue permanent injunctive relief restraining defendants and their
              officers, agents, directors, successors, employees, attorneys, or
25            representatives from further violations of the First, Eighth, and Fourteenth
              Amendments to the United States Constitution referenced herein as the
26            subject of Watson's claims for relief, including but not limited to

                                          7

1   enjoining defendants from policies, practices, actions, and omissions such
    as those alleged herein, requiring the establishment of appropriate and
2   effective means to prevent future such violations, and requiring defendants
    to provide Watson with all necessary and appropriate medical care;
3
    . . . (f)  Retain jurisdiction of this case until defendants have fully
4   complied with the orders of this Court, and there is a reasonable assurance
    that defendants will continue to comply in the future absent continuing
5   jurisdiction . . .

6        In short, plaintiff generally seeks injunctive relief that will provide him with "all

7   necessary and appropriate medical care," and requests that the court maintain jurisdiction to

8   ensure that plaintiff obtains such care.  Reference to the factual allegations of the complaint also

9   provides more detail of the care plaintiff appears to seek.  (See, e.g., FAC, ¶ 98 (noting that as of

10  the filing date of the FAC, plaintiff "has not been re-evaluated by Dr. Huffman or a competent

11  neurosurgeon [to determine whether surgery is advisable], he has not been provided with

12  additional physical therapy, and he continues to have difficulty obtaining his pain medication

13  with regularity"); see also id. at ¶ 96.)  However, the appropriateness of plaintiff's future medical

14  care will necessarily depend upon further and more current medical evaluations.

15       Defendants contend that this court lacks jurisdiction over plaintiff's claims for

16  equitable and injunctive relief because plaintiff may only pursue these matters as a member of the

17  class in Plata v. Schwarzenegger, 2005 WL 2932253 (N.D. Cal. 2005).  Plaintiff responds that he

18  is not a member of the Plata class action because he seeks appropriate treatment only for his

19  unique medical needs that arose after the stipulation was entered in Plata, and because he does

20  not challenge the terms of that stipulation.

21       The court takes judicial notice[3] of the Plata "Stipulation for Injunctive Relief."

22  (Dkt. No. 66-3 ("Stipulation").)  Plata is a class action of all inmates in California state prisons

23  with serious medical needs.  (Id. at ¶ 1.)  Inmates with serious medical conditions who are

24

25       [3]  Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80
    F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126
26  (1981).

1    housed at CSP-Solano, where plaintiff has been housed at all relevant times, are expressly

2    covered by Plata.  (Id. at ¶ 5.)  The Stipulation requires that all members of the class are to

3    receive constitutionally adequate medical care consistent with applicable policies and procedures

4    in effect as of February 2002.  (Id. at ¶ 4.)  Any disputes as to the adequacy of the policies and

5    procedures are to be resolved pursuant to the dispute resolution procedures set forth in the

6    Stipulation.  (Id. at ¶¶ 26-28.)  Disputes relative to the treatment of individual prisoners are to be

7    pursued through the administrative grievance process, and then through private mediation with

8    defendants.  (Id. at ¶ 30.)  These procedural requirements may be suspended for inmates

9    "requiring urgent medical care."  (Id. at ¶ 7.)

10               Plaintiff, a California state prison inmate with serious medical needs, is

11   necessarily a member of the Plata class and therefore generally precluded from seeking equitable

12   or injunctive relief to treat his serious medical needs.  See Meyer v. Schwarzenegger, 2008 WL

13   2223253, at *13-14 (E.D. Cal. 2008); accord, Martinez v. California, 2008 WL 782861, *3 (E.D.

14   Cal. 2008) (permitting defendants to renew their motion to dismiss if plaintiff's amended

15   complaint sought "injunctive relief that is covered in the remedial plan for Plata"); Choyce v.

16   Saylor, et al., 2007 WL 3035406 (N.D. Cal. 2007); Grajeda v. Horel, et al., 2009 WL 302708

17   (N.D. Cal. 2009).  Plaintiff's request to obtain "all necessary and appropriate medical care"

18   cannot reasonably be construed as "urgent medical care" temporarily excepting plaintiff from the

19   Plata class for the purpose of obtaining immediate injunctive relief.  Cf. Burnett v. Dugan, 618 F.

20   Supp. 2d 1232 (S.D. Cal. 2009) (granting preliminary injunctive relief to prisoner seeking

21   immediate compliance with medical order and chronos that he be housed in a "single cell with

22   single bunk without overhead bunk" to permit upright sitting following back surgery and due to

23   related medical issues); but see, Tillis v. Lamarque, 2006 WL 644876, *9 (N.D. Cal. 2006).[4]

24

25            [4]  The court in Tillis found that Plata did not bar the injunctive relief sought by plaintiff
     "solely on his own behalf" because such actions do not come within the following exception
26   contained within the Stipulation (Plata Stip. at ¶ 29):

                                                    9

1 **Rather, plaintiff generally seeks precisely what is required by <u>Plata</u>, constitutionally**

2 **adequate medical care, and is therefore a member of the <u>Plata</u> class.**

3       A plaintiff who is a member of a class action for equitable relief from prison

4 conditions may not maintain a separate, individual suit for equitable relief involving the same

5 subject matter of the class action.  <u>See</u> <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93 (9th Cir. 1979);

6 <u>see</u> <u>also</u> <u>McNeil v. Guthrie</u>, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for

7 injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought

8 where there is an existing class action."); <u>Gillespie v. Crawford</u>, 858 F.2d 1101, 1103 (5th Cir.

9 1988) (en banc) ("To allow individual suits would interfere with the orderly administration of the

10 class action and risk inconsistent adjudications.").  Plaintiff must therefore bring his "claims for

11 equitable relief . . . through the class representative until the class action is over or the consent

12 decree is modified." <u>McNeil</u>, 945 F.2d at 1166.

13       Accordingly, defendants' motion to dismiss plaintiff's claims for equitable and

14 injunctive relief concerning the provision of adequate medical care should be granted.  This case

15 may proceed only on plaintiff's damages claims.

16         2.  <u>INDIVIDUAL CAPACITY SUIT</u>

17       Plaintiff contends that he sues the individual defendants under Section 1983 in

18 both their personal and official capacities, the latter based on the exception of <u>Ex Parte Young</u>,

19 209 U.S. 123 (1908).  Under <u>Ex parte Young</u>, "a state official in his or her official capacity, when

20

21       Neither the fact of this stipulation nor any statements contained herein may be
used in any other case or administrative proceeding, except defendants, CDC, or

22 employees thereof reserve the right to use this Stipulation and the language herein
to assert issue preclusion and res judicata in other litigation seeking class or

23 systemic relief.

24 This court does not agree with the <u>Tillis</u> inverse construction of this language to conclude that a
plaintiff seeking individual relief "does not fit into the stipulation's exception." <u>Tillis</u>, 2006 WL

25 644876 at *9.  Rather, this language appears to be intended to minimize duplicative class actions.
Moreover, the construction advanced in <u>Tillis</u> was implicitly rejected in <u>Meyer v.</u>

26 <u>Schwarzenegger</u>, <u>supra</u>, 2008 WL 2223253 at *14.

sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 n.10 (1989) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985)).

However, for the reasons set forth above, plaintiff's claims for injunctive relief must be dismissed based on plaintiff's status as a member of the <u>Plata</u> class.  Thus, plaintiff may not sue defendants in their official capacity under Section 1983 for the purpose of obtaining equitable relief.

Moreover, as discussed below, to the extent the court finds that plaintiff has stated a claim against any defendant based in part on supervisorial liability, such liability is imposed against a supervisory official in his individual capacity.  Additionally, because the court recommends dismissal of plaintiff's claims under the Americans with Disabilities Act and Rehabilitation Act, there remains no other basis upon which to sue defendants in their official capacities.  The court therefore limits construction of plaintiff's claims under Section 1983 to be against defendants in their individual capacities only.

### 3.  EIGHTH AMENDMENT

Plaintiff alleges deliberate indifference to his serious medical needs, constituting cruel or unusual punishment in violation of the Eighth Amendment, against defendants Sisto, Traquina, Tan and Rohrer.  Defendants move to dismiss this claim to the extent that alleged facts are outside the statute of limitations or based on a theory of respondeat superior.

#### a.  Statute of Limitations

Plaintiff alleges that defendants have provided him with constitutionally inadequate medical care commencing with Dr. Traquina's initial evaluation of plaintiff on July 26, 2002.  (FAC, ¶ 25.)  Defendants contend that plaintiff is barred from alleging constitutional violations prior to September 10, 2003, based on the four-year limitations/tolling period accorded prisoner civil rights claims in California.  The only defendant against whom such allegations are

1  made prior to this date is Dr. Traquina.

2          Section 1983 contains no statute of limitations.  Thus, federal courts apply the

3  state's personal injury statute of limitations, subject to any state tolling provisions that are not

4  inconsistent with federal law.  Azer v. Connell, 306 F.3d 930, 935-36 (9th Cir. 2002).  Effective

5  January 1, 2003, the California statute of limitations for personal injury actions was extended

6  from one year to two years.  Cal. Code Civ. Proc. § 335.1; Maldonado v. Harris, 370 F.3d 945,

7  954-55 (9th Cir. 2004).  However, the two-year statute of limitations does not apply retroactively,

8  thus requiring application of the one-year limitations period to actions that accrued before

9  January 1, 2003.  Id.

10         "Although state law determines the length of the limitations period, 'federal law

11  determines when a civil rights claim accrues.'"  Azer, 306 F.3d 936 (quoting Morales v. City of

12  Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000).  "Under federal law, a claim accrues when

13  the plaintiff knows or has reason to know of the injury which is the basis of the action."

14  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).  In addition, in California the statute of

15  limitations for incarcerated prisoners serving less than a life sentence is tolled for two years.  Cal.

16  Civ. Proc. Code § 352.1(a); Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000).

17  "Accordingly, the effective statute of limitations for most prisoners is three years for claims that

18  accrued before January 1, 2003 (one year limitations period plus two year statutory tolling), and

19  four years for claims that accrued thereafter (two year limitations period plus two years statutory

20  tolling)."  Garcia v. Lunes, 2010 WL 1267128, *2 (E.D. Cal. 2010).

21         Plaintiff contends that "because [he] has alleged a continuing violation of his

22  rights, [his] Eighth Amendment claim did not accrue until he filed suit in 2007."  (Oppos. at pp.

23  12-13.)  Plaintiff relies on two cases applying the continuing violation doctrine, the Seventh

24  Circuit's decision in Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001), and the decision of the

25  United States District Court for the Southern District of California in Evans v County of San

26  Diego, 2008 WL 84249 (S.D. Cal. 2008).

1           In Heard, the court applied the continuing violations doctrine to find that

2   plaintiff's deliberate indifference claim based on the refusal of defendants to treat his hernia

3   accrued when defendants "learned he had a condition warranting medical attention yet

4   unreasonably refused to provide that attention," and thereafter re-accrued each day that

5   defendants refused to treat the condition, until the day that plaintiff was discharged from

6   defendants' institution.  Heard, 253 F.3d at 318.  Characterizing plaintiff's claim as a

7   "continuous series of events giv[ing] rise to a cumulative injury," the court found it judicially

8   efficient for the plaintiff to "bring a single suit based on an estimation of his total injuries . . . [as]

9   much preferred to piecemeal litigation despite the possible loss of accuracy."  Id. at 319.

10          The United States District Court for the Southern District of California applied the

11  reasoning of Heard to the facts presented in Evans, supra, 2008 WL 84249.  In Evans, the

12  plaintiff injured his knee on January 27, 2004, while exiting the shower area of a housing unit in

13  a San Diego detention facility.  Although plaintiff obtained an x-ray in February 2004, and was

14  seen by several physicians throughout his incarceration, his treatment was conservative until he

15  received surgeries to his knee on July 8, 2005, and December 22, 2006.  Plaintiff filed his federal

16  civil rights action on April 13, 2006, alleging deliberate indifference to his medical needs by

17  delaying meaningful treatment.  The court in Evans rejected defendants' contention that

18  plaintiff's cause of action accrued on the date of his injury.  The court noted the Ninth Circuit's

19  construction of the continuing violations doctrine in other contexts, see id., at *11, citing, inter

20  alia, Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) ("[a] continuing violation is occasioned

21  by continual unlawful acts, not by continual ill effects from an original violation" (citation

22  omitted)), and Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982) ("mere

23  continuing impact from past violations is not actionable" (citation and internal quotations

24  omitted)), and applied the doctrine to plaintiff's deliberate indifference claim, reasoning that

25  "[t]he crux of his complaint is that he did not receive arthroscopic knee surgery while in the

26  sheriff department's custody," rather than "complaining about the discrete failures of doctors

1    who treated him," and thus "[i]t is the aggregation of the failures to treat Plaintiff that gives rise

2    to his claim." Id. at *12.  The court applied the continuing violations doctrine to conclude that

3    the statute of limitations on plaintiff's claim commenced on (i.e., his cause of action accrued on)

4    the last day of his custody in the San Diego County Sheriff's Department (June 11, 2004), and

5    that plaintiff could therefore "reach back in seeking to prove liability and estimate damages[]. . ."

6    Id., citing Heard, 253 F.3d at 318.

7            More recently, within this district, the reasoning of Heard was accepted but found

8    inapplicable by the magistrate judge in Martin v. Woodford, 2010 WL 2773235 (E.D. Cal. 2010).

9    In Martin, the plaintiff claimed deliberate indifference to his serious medical needs based on the

10   failure of defendant physician to ensure that plaintiff obtained all of his prescribed heart

11   medications upon his transfer from Corcoran State Prison to Kern Valley State Prison ("KVSP").

12   Plaintiff saw defendant physician only once, on August 5, 2005, but the problems with plaintiff's

13   prescriptions occurred in August and September 2005, and plaintiff filed his action in March

14   2008.  In response to defendant's contention that plaintiff's claim was time-barred, plaintiff

15   argued, inter alia, that his claim was based on the continuing violation of state prison

16   overcrowding resulting in the failure/inability of defendant physician to transfer plaintiff back to

17   Corcoran which, unlike KVSP, had a pharmacy.  The court rejected this argument, not because of

18   a rejection of the continuing violations doctrine, but on the conclusion that it did not apply.  The

19   court reasoned that plaintiff failed to make allegations of overcrowding in his complaint, that his

20   complaint was limited to  allegations within a discrete period with apparent resolution, and that

21   plaintiff had no further contact with defendant.  Thus, concluded the court, plaintiff failed to

22   allege any constitutional violation by defendant within the two-year limitations period.  Id.

23           "Although the Ninth Circuit has not applied the continuing violation doctrine to

24   Eighth Amendment deliberate indifference claims," Martin, 2010 WL 2773235, at *5, the

25   allegations plaintiff makes herein are analogous to those made in Heard and Evans.  As in Heard

26   and Evans, plaintiff's case involves the claim that a prisoner health system, as administered by

14

1   various doctors and staff, consistently failed to provide adequate care for plaintiff's chronic and

2   deteriorating back condition.  Thus, application of the continuing violations doctrine to the

3   instant case appears appropriate.  Moreover, the impact of applying the doctrine to these facts is

4   di minimis, because it implicates only defendant Traquina (both as plaintiff's direct care provider

5   and in his capacity as CMO with continuing responsibility for plaintiff's care) and extends the

6   facts of this case little more than a year.

7            Accordingly, the court finds no statute of limitations bar to plaintiff's claims.[5]

8                          b.  Supervisorial Liability

9            Defendants seek to dismiss plaintiff's claims against defendants Sisto and

10  Traquina on the ground that they are improperly based on a theory of respondeat superior.

11           "Supervisory liability is imposed against a supervisory official in his individual

12  capacity for his own culpable action or inaction in the training, supervision, or control of his

13  subordinates, for his acquiescence in the constitutional deprivations of which the complaint is

14  made, or for conduct that showed a reckless or callous indifference to the rights of others."

15  Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) (citations and internal quotations omitted).

16  "Under Section 1983, supervisory officials are not liable for actions of subordinates on any

17  theory of vicarious liability.  A supervisor may be liable if there exists either (1) his or her

18  personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

19  between the supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black,

20  885 F.2d 642, 645-46 (9th Cir. 1989) (citations omitted).  Thus, "[a]lthough there is no pure

21  respondeat superior liability under § 1983, a supervisor is liable for the acts of his subordinates

22  'if the supervisor participated in or directed the violations, or knew of the violations [of

23  subordinates] and failed to act to prevent them.'"  Preschooler II v. Clark County School Bd. of

24

25       [5]  Thus, the court need not reach plaintiff's alternate contention that even "had the statute
     of limitations accrued at an earlier date, it would have been tolled while [he] pursued his
26   administrative remedies, beginning in September 2002."  (Oppos. at 13.)

                                              15

1  Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007), quoting Taylor v. List, 880 F.2d 1040, 1045 (9th

2  Cir. 1989).  Additionally, "[s]upervisory liability exists even without overt personal participation

3  in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself

4  is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

5  Hansen, 885 F.2d at 646, quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

6          On a motion to dismiss, the plaintiff "does not need to show with great specificity

7  how each defendant contributed to the violation of his constitutional rights.  Rather, he must state

8  the allegations generally so as to provide notice to the defendants and alert the court as to what

9  conduct violated clearly established law.  See Hydrick v. Hunter, 466 F.3d 676, 689-90 (9th Cir.

10  2006) (denying policy-making officials qualified immunity at the motion to dismiss stage based

11  on inferences that the officials played an instrumental role in the alleged abuses)."  Preschooler

12  II, at 1182.

13          Plaintiff identifies numerous factual allegations within the complaint that Dr.

14  Traquina (as one of plaintiff's physicians and then as CMO) both personally and directly violated

15  plaintiff's Eighth Amendment rights and then knowingly failed to prevent further violations by

16  his subordinates.  (Oppos., Dkt. No. 75, at p. 19, citing FAC, ¶¶ 25, 27, 30, 40, 42, 45, 49, 52, 53,

17  56, 64, 65, 70, 73, 75, 83, 97.)  These allegations are sufficiently specific to state an Eighth

18  Amendment claim against Dr. Traquina both by his own actions and by his knowing ratification

19  of the actions of his medical staff.

20          The same is not true of defendant Sisto.  The cited factual allegations state only

21  that "Sisto received a copy of the Director's Level Appeal Decision" on two of plaintiff's

22  administrative grievances.  (FAC, ¶ 73, 75.)  Plaintiff asks the court to infer Sisto's knowledge of

23  plaintiff's administrative grievances and the Director's Level responses thereto.  (Oppos. at p.

24  19.)  However, these allegations fail to affirmatively link or connect the claimed deprivations of

25  medical care with Sisto's actions.  Vague and conclusory allegations of official participation in

26  civil rights violations are not sufficient to state a claim.  Ivey v. Board of Regents, 673 F.2d 266,

268 (9th Cir. 1982).

Accordingly, this court will recommend dismissal of defendant Sisto from plaintiff's Eighth Amendment claim (and, based on the further findings herein, from this action).[6]

c.  <u>Contours of Eighth Amendment Claim</u>

Plaintiff's Eighth Amendment claim should proceed only against defendants Traquina, Tan and Rohrer, in their personal capacities; plaintiff's claim against Traquina includes the physician's conduct both individually and in his supervisory role as Chief Medical Officer.

4.  <u>FIRST AMENDMENT RETALIATION CLAIM</u>

Defendants contend that plaintiff has failed to plead the essential elements of a First Amendment retaliation claim against defendants Traquina and Tan.

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2005).  Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights.  <u>Id</u>. at 568 n.11.  "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action.  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009), citing <u>Rhodes</u>, 408 F.3d at 568 n.11.  A plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's

_____

[6]  At the hearing on this matter, plaintiff's counsel stated that defendant Sisto had personal knowledge of plaintiff's medical condition and care, as demonstrated by a responsive letter he wrote to plaintiff's wife.  Counsel acknowledged that this allegation is not contained in the First Amended Complaint; nor is the allegation set forth in plaintiff's opposition to the instant motion.  And, in fact, Sisto is now retired.  As the court stated at the hearing, plaintiff may seek leave of court to further amend his complaint to add these allegations; however, such request will be carefully scrutinized pursuant to the factors set forth in Federal Rule of Civil Procedure 15.

1   conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Mere

2   conclusions of hypothetical retaliation will not suffice; rather, a prisoner must "allege specific

3   facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier

4   v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

5          Against defendant Tan, plaintiff alleges in pertinent part that plaintiff was

6   prescribed methadone for pain management in November 2002 by orthopedic physician Kofoed

7   (FAC, at ¶  29); that Dr. Tan was aware of this fact (id. at ¶ 46); but that on September 27, 2007,

8   less than one month after plaintiff filed this suit, "Tan took Watson off his methadone pending an

9   MD assessment of need" (id. at ¶ 82), which plaintiff immediately challenged by submitting a

10  Form 7362 and administrative grievance (id.), but which Dr. Tan did not alter when he next

11  examined plaintiff on October 4, 2007 (id. at ¶ 83).

12         Against defendant Traquina, plaintiff alleges in pertinent part that in March 2006,

13  plaintiff obtained a chrono signed by Dr. Traquina "stating that Watson had 'severe' degenerative

14  disc disease in his lumbar spine and noting that he was not to be subjected to prolonged walking,

15  standing, or sitting for more than 30 minutes" (FAC, at ¶ 70); that plaintiff filed numerous

16  administrative grievances against the CSP-S medical staff while Dr. Traquina was his physician

17  and acting as CMO (see supra); that after plaintiff initiated this action on August 28, 2007 (id. at

18  ¶ 81), and filed a motion for injunctive relief (on August 14, 2008) challenging the fact that

19  plaintiff was being "forc[ed] . . . to wait from 40 minutes to an hour" before being provided his

20  pain medication (id. at ¶ 97; see also Dkt. Nos. 24, 29, 40), and after the court (on September 26,

21  2008) ordered defendants to supplement their opposition to plaintiff's motion for injunctive relief

22  (FAC at ¶ 97; see also Dkt. No. 40), Dr. Traquina did the following:

23          On October 9, 2008, after the Court ordered defendants to supplement
            their opposition to Watson's motion for injunctive relief, Dr. Traquina
24          issued a new chrono for Watson, replacing the chrono that Dr. Chen had
            issued just over three months earlier.  Without personally evaluating
25          Watson, Dr. Traquina removed the direction allowing Watson to obtain his
            narcotic medication after his diabetic medication and replaced the
26          direction referring to no prolonged standing, sitting, or walking for greater

than 30 minutes with a direction omitting the restriction on prolonged
sitting.  Dr. Traquina also wrote a note in Watson's medical file stating
that Watson has "mild" degenerative disc disease.  This characterization of
Watson's medical condition directly contradicts the conclusion reached by
the spinal specialists who evaluated Watson, Watson's primary care
physicians, and Dr. Traquina's previous statements that Watson had
"severe" degenerative disc disease.

Id. at ¶ 97.)

Against both Dr. Tan and Dr. Traquina, plaintiff further alleges that "[d]efendants

retaliated against Watson for exercising his First Amendment rights, specifically by filing prison

grievances and this action complaining about the inadequate medical care that he received" (id. at

¶ 115), demonstrated by the "obstruction of Watson's medical care and failure to provide Watson

with chronos appropriately addressing his serious medical needs" (id. at ¶ 121); that

"[d]efendants' actions chilled Watson's exercise of his First Amendment rights" (id. at ¶ 118);

and that "[d]efendants' actions did not reasonably advance a legitimate correctional goal" (id. at

¶ 119).

Plaintiff contends that these allegations adequately plead First Amendment

retaliation claims that:  (1) Dr. Tan, in retaliation against plaintiff for filing administrative

grievances and this lawsuit, reduced plaintiff's pain medication and ordered that it not be

renewed until plaintiff received a medical assessment of need; and (2) Dr. Traquina downgraded

plaintiff's diagnosis and chrono "because Watson filed prison grievances, a complaint, and a

motion for injunctive relief against CMO Traquina and the department which he directed."

(Oppos. at pp. 26-27.)

Defendants contend that neither of plaintiff's retaliation claims are sufficiently

alleged and, in addition, that plaintiff's claim is further inadequate against Dr. Traquina to the

extent that it relies on his administrative review of plaintiff's grievances, citing Buckley v.

Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ( "[A prison] grievance procedure is a procedural right

only, it does not confer any substantive right upon the inmates"), and Ramirez v. Galaza, 334

F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement

1    to a specific grievance procedure).  (Dkt. No. 66, at 15-16.)

2           First, the Prison Litigation Reform Act ("PLRA") requires exhaustion of

3    administrative remedies *prior* to filing suit.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

4    The crux of plaintiff's retaliation claims against both Dr. Tan and Dr. Traquina is that each made

5    retaliatory decisions *after* plaintiff initiated this action—that "almost immediately after Watson

6    filed this lawsuit," Dr. Tan reduced plaintiff's methadone and ordered that it not be renewed

7    pending further medical assessment (Oppos. at 27), and that "after the Court ordered defendants

8    to supplement their opposition to Watson's motion for injunctive relief," Dr. Traquina issued an

9    unfavorable chrono (id.).  These alleged facts cannot support a claim for retaliation prior to the

10   filing of this action.

11          Second, and more significantly, with respect to plaintiff's more general allegations

12   of retaliation in response to his filing of administrative grievances, plaintiff has not alleged any

13   direct or tangible harm in the exercise of his First Amendment rights.  He does not allege, nor

14   does it appear, that his right to file administrative grievances or this action was impaired in any

15   way.  Nor does plaintiff allege another specific harm in response to filing administrative

16   grievances.  Brodheim, supra, 584 F.3d at 1269; Rhodes, 408 F.3d at 568 n.11.  Rather, the

17   adverse conduct which plaintiff challenges (decisions relative to his medical care), and the

18   resulting harm (his deteriorating back condition) are not framed as retaliatory actions and thus do

19   not state First Amendment retaliation claims.

20          This court will therefore recommend that plaintiff's First Amendment retaliation

21   claims be dismissed.  However, this conclusion is not intended to preclude the admission of the

22   foregoing evidence in support of plaintiff's Eighth Amendment claim.  Rather, plaintiff's

23   allegations that his prescription for methadone was suspended, that his chrono was changed to

24   require that he wait a longer period to obtain pain medication, and that physicians inappropriately

25   downgraded the severity of his back condition, remain potentially material to plaintiff's claim

26   that defendants were, and continue to be, deliberately indifferent to his serious medical needs.

1        C. AMERICANS WITH DISABILITIES ACT AND SECTION 504

2                Defendants contend that plaintiff's First Amended Complaint fails to state a claim

3    under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act

4    ("Section 504").  Defendants argue that plaintiff has failed to allege that he was excluded from

5    participating in, or was otherwise discriminated against with regard to, any services, programs, or

6    activities at CSP-S on the basis of a disability.  Rather, argue defendants, plaintiff is only

7    challenging the quality of his medical care, as demonstrated by the allegations of plaintiff's

8    complaint that he frequently obtained medical services but not of the type or quality that he

9    sought.

10               In support of this argument, defendants have submitted the Declaration of N.

11   Grannis, CDCR Chief of the Inmate Appeals Branch. (Dkt. No. 66-2, at pp. 2-6, and attachments

12   thereto.)  Plaintiff moves to strike this evidence.  (Dkt. No. 76.)  The court addresses plaintiff's

13   motion to strike before turning to the merits of this issue.

14           1. MOTION TO STRIKE

15               Plaintiff moves to strike the Declaration of N. Grannis filed in support of

16   defendants' motion to dismiss.  The Grannis Declaration ("Grannis Decl.") provides summaries

17   of four of plaintiff's administrative grievances alleging violations of the ADA, and concludes

18   that none of those "filed . . . at the Director's (Third) Level [were] accepted for review, relative to

19   his claims against [these] defendants . . . for violation of the Americans with Disabilities Act[,]"

20   and thus plaintiff "never exhausted his available administrative remedies with respect to the

21   ADA claims. . ." (Dkt. No. 66-2, at ¶ 6).  Defendants rely on this information in support of their

22   argument, discussed below, that plaintiff fails to state a claim under the ADA or Section 504,

23   because his administrative grievances asserting "discrimination" were in fact premised on the

24   alleged failure of defendants to provide plaintiff with adequate medical care, not on denying

25   plaintiff access to programs or activities as a result of his disability.  (Dkt. No. 66, at pp. 17-18.)

26               Plaintiff contends that this evidence is inadmissible and may not be considered by

the court without converting defendants' motion to dismiss into a motion for summary judgment.
Plaintiff contends that the content of the declaration "exceeds the scope of the complaint to the
extent it purports to represent the entire universe of Watson's ADA grievances," and "is clearly
not a matter of public record."  Plaintiff relies on the legal standards previously cited in support
of the court's consideration of defendants' motion to dismiss, as well as Lee v. City of Los
Angeles, 250 F.3d 668, 688 (9th Cir. 2001), for the rule that the court "may not consider any
material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  (Dkt. No. 76, at 1.)  Plaintiff
requests the opportunity to file supplemental briefing should the court deny his motion to strike.

Significantly, defendants move to dismiss plaintiff's ADA and Section 504 claims
on substantive grounds, not because plaintiff may have failed to exhaust his administrative
remedies.  Because, for the reasons set forth below, the court finds that defendants' motion has
merit on the grounds asserted, the information provided by the Grannis declaration is both
superfluous and inapposite.  Additional briefing is not necessary.

Accordingly, the court will grant plaintiff's motion to strike.

2. MERITS

The ADA and Rehabilitation Act preclude discrimination on the basis of
disability, and apply to inmates and parolees in the state correctional system.  Armstrong v.
Wilson, 124 F.3d 1019, 1022-24 (9th Cir. 1997).  In order to state a claim under Title II of the
ADA, a plaintiff must allege that:  "(1) he 'is an individual with a disability;' (2) he 'is otherwise
qualified to participate in or receive the benefit of some public entity's services, programs, or
activities;' (3) he 'was either excluded from participation in or denied the benefits of the public
entity's services, programs, or activities, or was otherwise discriminated against by the public
entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his]
disability.'"  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting
Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).  Similarly, to state a claim
under Section 504 of the Rehabilitation Act, a plaintiff must allege that "(1) he is an individual

22

with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001); O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007).[7]

As framed by the First Amended Complaint, plaintiff alleges that he sought ADA status pursuant to an administrative grievance filed March 24, 2003, and was "granted" such status on April 19, 2003, based on the finding that plaintiff was not capable of prolonged standing, walking, or sitting for longer than 30 minutes. (FAC, at ¶ 35.) Plaintiff alleges generally that he is "a qualified individual with a disability as defined in the ADA and qualified as an individual with a disability as defined in section 504." (Id. at ¶ 126.) Finally, plaintiff alleges:

> As a result of defendants' policies and practices which result in inadequate medical care, Watson has been excluded from the substance abuse programs, education, vocation, work furlough and work credit, recreation, dining hall and other meals, yard time, visiting, classification, discipline, telephone, emergency procedures and/or other programs and services for which he is otherwise qualified that defendants provided to individuals under their custody and control, thereby subjecting him to discrimination in violation of the ADA and section 504.

(Id. at ¶ 127.)

As framed in his opposition to the motion to dismiss, plaintiff states more narrowly that he is alleging "discriminatory treatment of his spinal injury by reason of his disability" (Oppos., at p. 29 n.12, and related text) "by [defendants] disregarding, revoking, and/or failing to issue chronos confirming that he is unable to sit, stand, or walk for more than

---

[7] There is no significant difference in the analysis of rights and obligations created by the Rehabilitation Act and the ADA. See, e.g., Vinson v. Thomas, 288 F.3d 1145, 1152 (9th Cir. 2002), citing Zukle v. Regents of the University of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); see also Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d 879, 884 (9th Cir. 2004). Claims made pursuant to the Rehabilitation Act are assessed according to the same standards applied under the ADA. See 29 U.S.C. § 794(d), 791(g) (applying ADA standards to Rehabilitation Act).

1    thirty minutes and permitting him to receive his pain medication immediately after the diabetics

2    receive their medication" (Oppos. at 28) or, more succinctly, "by denying him adequate access to

3    CSP-Solano's prescription services" (id. at 24).

4           Even if plaintiff's back condition and pain are construed as a "disability" within

5    the meaning of the ADA and Section 504,[8] he has failed to articulate a cognizable discrimination

6    claim under those statutes.  This conclusion is underscored by plaintiff's effort, in his opposition,

7    to narrow the broad allegations of his complaint that he was "excluded" from a significant range

8    of prison programs, services and activities (FAC, at ¶ 127 ) to the singular allegation that

9    defendants have failed to consistently issue and adhere to medical chronos limiting plaintiff's

10   wait for his pain medication.  As refined, this allegation challenges the medical assessments

11   underlying plaintiff's chronos;[9] it does not state a claim of discrimination based on disability.

12          Plaintiff's effort to characterize his claim as one of disparate access to prescriptive

13   medication is unavailing.  Disparate prisoner treatment cases premised on cognizable ADA

14   _____

15          [8]  According to the ADA, an individual is disabled if that individual "(1) has a physical or
     mental impairment that substantially limits one or more of the individual's major life activities;
16   (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  Deppe
     v. United Airlines, 217 F.3d 1262, 1265 (9th Cir. 2000); see also 42 U.S.C. § 12102(2); 29
17   C.F.R. § 1630.2(g); Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d 879, 884 (9th Cir.
     2004).

18          [9]  In summary, plaintiff received several medical chronos requiring that he not be
     subjected to prolonged standing, walking or sitting for longer than thirty minutes at a time.
19   (FAC, at ¶ 35 (April 19, 2003), ¶ 45 (November 17, 2003), ¶ 68 (October 19, 2005), ¶ 70 (March
     2006); see also id. at ¶ 44 (issued November 6, 2003, exempting plaintiff from "getting down" in
20   "alarm situations").  After filing his initial complaint in this action in August 2007 (FAC, at ¶
     81), and experiencing a fall in November 2007 (id. at ¶ 85), plaintiff filed three administrative
21   grievances complaining about the length of his wait to receive his pain medication (see id. at ¶ 87
     (filed May 27, 2008, and complaining of waiting from forty minutes to an hour to receive his
22   medication), ¶ 88 (filed June 2, 2008, complained of being required to sit and wait for his
     medication), ¶ 89 (filed June 18, 2008, "complaining that his chrono had been improperly
23   revoked and requesting that he be granted an appointment with his primary care physician in
     order to clarify that he could not stand, walk, or sit for sixty minutes" (emphasis added)).  The
24   June 2, 2008 chrono issued by Chen required a waiting time of no more than 30 minutes, based
     on limitations of sitting, standing and walking to 30 minutes.  (Id. at ¶ 90.)  The October 9, 2008
25   chrono issued by Dr. Traquina maintained the limitations in standing and walking but provided
     for unlimited sitting.  (Id. at ¶ 97.)  At the hearing, defendants' counsel stated that the operative
26   chrono provides for a waiting time of up to 60 minutes.

1   claims are premised on institutional policies or practices that could have a discriminatory impact

2   on prisoners who share plaintiff's "disability."   See, e.g., Peacock v. Terhune, 2002 WL 459928,

3   *2 ( E.D. Cal. 2002) (finding ADA claim based on plaintiff's allegations that new policy

4   requiring paralyzed inmates to obtain their supplies at another location, resulting in difficulty

5   making "med call" due to paraplegia and need to perform "manual bowel care"); McNally v.

6   Prison Health Services, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (finding ADA claim based on

7   plaintiff's allegations that jail discriminated against him based on his HIV-positive status by

8   denying him immediate access to prescribed medications, as compared to non-HIV detainees

9   who had immediate access to their prescriptions for other illnesses).  In contrast, courts

10  construing claims similar to plaintiff's have concluded that such allegations do not come within

11  the provisions of the ADA or Section 504.  See, e.g., McCoy v. Los Angeles County Sheriff's

12  Dept., 2010 WL 330235, *9 (C.D. Cal. 2010) (finding that plaintiff's claims of failure to

13  accommodate his disability were instead claims of medical negligence).  As summarized by the

14  court in McCoy, the following similar cases reach the same result:

15              [T]o the extent that plaintiff may be purporting to allege that the
                [defendant county sheriff's department] violated the ADA or the
16              Rehabilitation Act by failing to provide adequate medical treatment for his
                disabilities, such a claim does not fail within the provisions of either the
17              ADA or § 504 of the Rehabilitation Act.  See, e.g., Alexander v. Tilton,
                2009 WL 464486, at *7 [] (E.D. Cal. Feb. 24, 2009) (collecting cases and
18              noting that "other courts have found that the ADA and [the Rehabilitation
                Act] do not create a federal cause of action for prisoners challenging the
19              medical treatment provided for their underlying disabilities"); Burger v.
                Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005) (holding that claims
20              pursuant to the ADA or the Rehabilitation Act "cannot be based on
                medical treatment decisions"); Grzan v. Charter Hosp. of Northwest
21              Indiana, 104 F.3d 116, 121-22 (7th Cir. 1997) ("Allegations of
                discriminatory medical treatment do not fit into the four-element
22              framework required by section 504 [of the Rehabilitation Act].").

23  McCoy, supra, at *9.

24              Accordingly, this court will recommend dismissal of plaintiff's claims under the

25  Americans with Disabilities Act and Rehabilitation Act.

26  ////

IV. <u>SUMMARY</u>

For the foregoing reasons, this court will grant plaintiff's motion to strike the Declaration of N. Grannis filed in support of defendants' motion to dismiss. In addition, the court will recommend that defendant Sisto be dismissed; that plaintiff's claims for equitable and/or injunctive relief be dismissed; that plaintiff's First Amendment retaliation claims be dismissed; and that plaintiff's claims made pursuant to the ADA and Section 504 be dismissed. It is the recommendation of this court that this action should proceed only on plaintiff's Eighth Amendment claims against defendants Traquina, Tan and Rohrer.

V. <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to strike defendants' evidence (Dkt. No. 76) is granted.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (Dkt. No. 66) plaintiff's First Amended Complaint should be granted in part and denied in part;

2. Defendant Sisto should be dismissed;

3. Plaintiff's claims for equitable and/or injunctive relief should be dismissed;

4. Plaintiff's First Amendment retaliation claims should be dismissed;

5. Plaintiff's claims made pursuant to the Americans with Disabilities Act and Rehabilitation Act should be dismissed; and

6. This action should proceed on plaintiff's Eighth Amendment claims against defendants Traquina, Tan and Rohrer, in their individual capacities, including against Traquina in his supervisory role.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 1, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

wats1871.mtd