1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NYLES LAWAYNE WATSON,

11               Plaintiff,                 No. 2:07-cv-01871 LKK KJN P

12        vs.

13   D.K. SISTO et al.,                     <u>AMENDED</u>

14               Defendants.                <u>ORDER</u> and

15   _____/          <u>FINDINGS AND RECOMMENDATIONS</u>

16               Plaintiff is a state prisoner proceeding in forma pauperis and with appointed

17   counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Presently pending for

18   decision by this court is defendants' motion to dismiss plaintiff's First Amended Complaint.  The

19   motion was heard on August 13, 2009, by the magistrate judge previously assigned this case.

20   This action was assigned to the undersigned magistrate judge on February 9, 2010.[1]

21               On September 3, 2010, this court issued an Order and Findings and

22   Recommendations addressing all pending matters.  However, on September 22, 2010, the court

23   vacated its ruling in light of the Ninth Circuit's opinion in <u>Rhodes v. Robinson</u>, 621 F.3d 1002

24   _____

25        [1]  This action is referred to a United States Magistrate Judge pursuant to 28 U.S.C.
     § 636(b)(1)(B), Local General Order No. 262, and E.D. Cal. L.R. ("Local Rule") 302.  The
     undersigned magistrate judge has reviewed the audio recording of the August 13, 2009 hearing
26   held before the former magistrate judge.  (<u>See</u> <u>also</u> Dkt. No. 95 (transcript of hearing).)

                                            1

(9th Cir. 2010), filed on September 8, 2010.  The court now issues this Amended Order and

Findings and Recommendations.

I.  INTRODUCTION

Plaintiff Nyles Lawayne Watson filed this action in the United States District

Court for the Northern District of California, on August 28, 2007.  The case was transferred to

the Eastern District on September 10, 2007.  On June 15, 2009, with leave of court, plaintiff filed

the operative First Amended Complaint ("FAC" or "complaint").  (Dkt. No. 65.)

The FAC alleges three legal claims against eight defendants.  After motions to

dismiss were filed by defendant Naku (Dkt. No. 67), and the other defendants (Dkt. No. 66),

plaintiff voluntarily dismissed some claims and defendants (Dkt. Nos. 74, 81 and 82).  As now

framed, plaintiff's FAC alleges:  (1) deliberate indifference to plaintiff's serious medical needs,

constituting cruel or unusual punishment in violation of the Eighth Amendment, against former

California State Prison-Solano ("CSP-S") Warden D.K. Sisto, CSP-S physician and Chief

Medical Officer ("CMO") Traquina, and CSP-S physicians Tan and Rohrer; (2) retaliation for

filing administrative grievances, in violation of the First Amendment, against CSP-S physicians

Traquina and Tan; and (3) discrimination, in violation of the Americans with Disabilities Act and

Section 504 of the Rehabilitation Act, against the California Department of Corrections and

Rehabilitation ("CDCR"), CSP-S, Warden Sisto and CMO Traquina.  (FAC, at pp. 18-21.)[2]

Plaintiff seeks compensatory and punitive damages, injunctive relief, costs and

fees.  (FAC, at pp. 21-22.)

II.  PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff contends that, "[f]rom 2002 through and including the present day, [he]

has received constitutionally inadequate medical care" for his lower back condition while

incarcerated at CSP-S.  (FAC, at ¶ 19.)  Regarding the period prior to 2002, when plaintiff was

---

[2]  Page references to filed documents refer to the court's electronically-created pagination.

incarcerated at CSP-Sacramento ("CSP-SAC"), plaintiff makes the following factual allegations: On May 12, 1998, plaintiff strained his back (id. at ¶ 20); he was prescribed ibuprofen and taught leg exercises to loosen his back muscles (id.); on June 25, 1998, a physician ordered x-rays of plaintiff's lumbar spine (the results are not noted) (id. at ¶ 21); on August 7, 1998, a physician noted that plaintiff had re-injured his lower back and that he had a strain at his L5 disc (id.); on September 7, 1999, plaintiff complained of lower back pain after twisting his back while getting out of bed and notified a physician that his back had been hurting for years (id. at ¶ 22); and on December 22, 2000, plaintiff complained of chronic lower back pain (id. at ¶ 23).

Plaintiff was transferred to CSP-S on October 2, 2001, and alleges that he stated at his initial health interview that he suffered from back pain.  (Id. at ¶ 24.)  Plaintiff states that his medical records were timely transferred from CSP-SAC.  (Id.)  On July 26, 2002, plaintiff was examined for back pain at CSP-S by defendant physician (later CMO) Traquina, who prescribed naproxen.  (Id. at ¶ 25.)  On September 24, 2002, plaintiff filed an administrative grievance alleging inadequate medical care for his lower back pain.  (Id. at ¶ 26.)  X-rays were taken on October 23, 2002.  Traquinia subsequently diagnosed plaintiff with degenerative disc disease, ordered an orthopedic consultation and a back brace, and instructed plaintiff to return in four weeks.  (Id. at ¶ 27.)  Plaintiff was examined by an orthopedic specialist, Dr. Kofoed, on November 30, 2002, who prescribed methadone and ordered an MRI.  (Id. at ¶ 29.)  On January 7, 2003, Dr. Traquina ordered a neurology consultation, which was obtained on January 28, 2003.  (Id. at ¶¶ 30, 31.)

An MRI was conducted on February 24, 2003, which revealed marked disc dessication, disc space narrowing, and disc bulging at the L5-S1 level, and minimal disc desiccation and bulging at L4-5.  (Id. at ¶ 32.)  Plaintiff alleges that these findings reflected "Modic Type 1" changes at L5-S1, presenting a higher likelihood of surgical success at that time than would later be possible after further deterioration of plaintiff's lumbar spine.  (Id. at ¶ 32.)  Plaintiff filed an administrative grievance on March 24, 2003, alleging that he was in constant

pain and needed to see a surgeon.  (Id. at ¶ 35.)  Plaintiff states that on April 19, 2003, he was "granted ADA status" and a medical chrono was issued noting that plaintiff was not capable of prolonged standing, walking or sitting for longer than thirty minutes.  (Id. at ¶ 35.)  On May 13, 2003, plaintiff requested a transfer to California Medical Facility ("CMF") as a "reasonable accommodation" in order to obtain therapy and surgery.  (Id. at ¶ 38.)

On March 15, 2003, orthopedist Dr. Kofoed referred plaintiff to a neurosurgeon to evaluate whether plaintiff was a surgical candidate.  (Id. at ¶ 34.)  However, six months later, when outpatient services attempted to schedule the neurosurgery consultation, the February 2003 MRI had become outdated.  (Id. at ¶ 41.)  Plaintiff was again referred for an MRI, which was conducted on April 8, 2004, showing significant deterioration since the last MRI, classifiable as "Modic Type 2" changes less correctable by surgery and at a higher degree of risk.  (Id. at ¶¶ 47, 50.)  Plaintiff was seen by another orthopedist specializing in spinal surgery (Dr. Farr) on June 16, 2004, who recommended pain management and epidural injections.  (Id. at ¶ 54.)

Meanwhile, plaintiff was referred to physical therapy on February 26, 2003.  (Id. at ¶ 33.)  However, the referral was not implemented until May 24, 2004, fifteen months later, at which point plaintiff claims it was less effective than it would have been had he received physical therapy earlier.  (Id. at ¶ 52.)

Plaintiff sought to expedite his care by a letter written October 19, 2003, to the Chief Medical Officer, and by filing administrative grievances on February 19, 2004, March 23, 2004, and April 28, 2004.  (Id. at ¶¶ 42, 48, 49, 51.)  Both Dr. Traquina and Dr. Tan signed "chronos" limiting plaintiff's activities (id. at ¶¶ 44, 45), but allegedly both failed to timely implement plaintiff's referrals for specialized care (see generally id. at ¶¶ 25-53).

Plaintiff was seen by Dr. Noriega and Dr. Rohrer in July 2004, but allegedly neither sought to implement the June 2004 recommendations of Dr. Farr.  (Id. at ¶ 55.)  Plaintiff filed an administrative grievance on September 2, 2004, seeking implementation of Dr. Farr's recommendations.  (Id. at ¶ 56.)  Thereafter, Dr. Rohrer examined plaintiff and ordered epidural

4

injections, and Dr. Noriega granted plaintiff's grievance, but plaintiff did not begin receiving epidural injections until January 14, 2005.  (Id. at ¶ 57-61.)

A new MRI was ordered on January 31, 2005, but not obtained until August 16, 2005.  (Id. at ¶¶ 62, 66.)  Despite an August 2005 medical appraisal which plaintiff alleges stated that he needed to be referred to a neurosurgeon, Dr. Noriega examined plaintiff in September and December 2005 without making such a referral.  (Id. at ¶ 67, 69.)

Plaintiff was treated by Dr. Naku from November 2005 to June 2006, by Dr. Tan in May 2006, and by Dr. Rohrer in July and August 2006, without any of those physicians making further referrals.  (Id. at ¶¶ 70, 71.)  Plaintiff filed administrative grievances in August 2005 and August 2006.  (Id. at ¶ 65, 73.)  Plaintiff was again seen by Dr. Tan in December 2006 who referred him for further evaluation by Dr. Farr in May 2007.  (Id. at ¶ 74.)  Plaintiff filed another administrative grievance in December 2006.  (Id. at ¶ 75.)  Plaintiff was seen by Dr. Tan in March 2007, and by Dr. Rohrer in May 2007, and finally scheduled for his fourth MRI on August 2, 2007.  (Id. at ¶ 76-80.)

Plaintiff filed his initial complaint in this action on August 28, 2007, alleging that his back impairment grew more severe since 2002 due to defendants' lack of adequate care, resulting in irreversible damage to his spine and chronic pain that is now less amenable to surgical intervention.

On September 27, 2007, after plaintiff filed the instant action, Dr. Tan rescinded plaintiff's prescription for methadone pending further medical assessment.  (Id. at ¶ 82.)  Dr. Tan examined plaintiff on October 4, 2007.  Plaintiff filed administrative grievances on October 2 and 4, 2007.  (Id. at ¶¶ 82, 83.)

On May 12, 2008, plaintiff was seen by Dr. Huffman, an orthopedic surgeon specializing in spinal surgery.  (Id. at ¶ 86.)  Dr. Huffman recommended a regimen of physical therapy, pain medication and epidural injections, with a follow-up appointment in three months to evaluate for surgery, but advised plaintiff that there was only a 70% chance that surgery would

1  be successful and it would not eliminate plaintiff's pain.  (Id.)  Plaintiff did not commence

2  physical therapy until September 13, 2008, and did not receive a follow-up appointment with

3  Dr. Huffman.  (Id. at ¶ at 96, 98.)

4         Meanwhile, in May and June 2008, plaintiff filed three administrative grievances

5  alleging that medical staff was making plaintiff wait for excessively long periods of time to

6  receive his medications, in violation of chronos reflecting plaintiff's limitations in sitting,

7  standing and walking.  (Id. at ¶ 87-89.)  "On June 25, 2008, Dr. Chen issued a chrono stating that

8  Watson was to receive his narcotic medication after his diabetic medication and that he was not

9  to be subjected to prolonged walking, sitting, or standing for more than 30 minutes."  (Id., at ¶

10 90.)  Thereafter, "[o]n October 9, 2008 . . . Dr. Traquina issued a new chrono for Watson,

11 replacing the chrono that Dr. Chen had issued . . . removed the direction allowing Watson to

12 obtain his narcotic medication after his diabetic medication and replaced the direction referring to

13 no prolonged standing, sitting, or walking for greater than 30 minutes with a direction omitting

14 the restriction on prolonged sitting."  (Id. at ¶ 97.)

15 III.  DISCUSSION

16     A.  LEGAL STANDARDS FOR MOTION TO DISMISS

17         A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

18 challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

19 Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

20 of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

21 plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

22 also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

23 motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

24 to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

25 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).  "'A claim

26 has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806, 812 (9th Cir. 2010) (quoting <u>Iqbal</u>, 129 S.Ct. at 1949).  The court accepts "all facts alleged as true and construes them in the light most favorable to the plaintiff."  <u>County of Santa Clara v. Astra USA, Inc.</u>, 588 F.3d 1237, 1241 n.1 (9th Cir. 2009).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  <u>Paulsen</u>, 559 F.3d at 1071 (citations and quotation marks omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However, under the "incorporation by reference" doctrine, a court may also review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted and modification in original).  The incorporation by reference doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  <u>Id</u>.

B.  <u>CLAIMS PURSUANT TO 42 U.S.C. § 1983</u>

1.  <u>INJUNCTIVE RELIEF</u>

Defendants contend that this court lacks jurisdiction over plaintiff's claims for equitable and injunctive relief because plaintiff may only pursue these matters as a member of the class in <u>Plata v. Schwarzenegger</u>, 2005 WL 2932253 (N.D. Cal. 2005).  Plaintiff responds, in pertinent part, that the <u>Plata</u> class action does not foreclose his independent pursuit of equitable

1  relief in the form of treatment for his discrete medical needs, but precludes only individual

2  actions that seek system-wide injunctive relief also sought by the Plata class.

3         As set forth in his "Prayer for Relief," plaintiff seeks the following equitable and

4  injunctive relief (FAC, at p. 21):

5      (a)  Issue permanent injunctive relief restraining defendants and their officers,
    agents, directors, successors, employees, attorneys, or representatives from further

6      violations of the First, Eighth, and Fourteenth Amendments to the United States
    Constitution referenced herein as to the subject of Watson's claims for relief,

7      including but not limited to enjoining defendants from policies, practices, actions,
    and omissions such as those alleged herein, requiring the establishment of

8      appropriate and effective means to prevent future such violations, and requiring
    defendants to provide Watson with all necessary and appropriate medical care;

9

10      . . . (f)  Retain jurisdiction of this case until defendants have fully complied with
    the orders of this Court, and there is a reasonable assurance that defendants will
    continue to comply in the future absent continuing jurisdiction . . .

11

12         The factual allegations of the complaint provide additional detail regarding the

13  equitable relief plaintiff seeks.  See FAC, ¶ 98 (stating that as of the filing date of the FAC,

14  plaintiff had "not been re-evaluated by Dr. Huffman or a competent neurosurgeon [to determine

15  whether surgery is advisable], he has not been provided with additional physical therapy, and he

16  continues to have difficulty obtaining his pain medication with regularity"); see also id. at ¶ 96

17  (stating that "[a]lthough Watson received . . . three physical therapy sessions, Watson never

18  received a follow-up appointment with Dr. Huffman per his recommendation.  Thus,

19  Dr. Huffman was unable to re-evaluate whether surgery was advisable for Watson.").

20         The court takes judicial notice[3] of the Plata "Stipulation for Injunctive Relief."

21  (Dkt. No. 66-3 ("Stipulation").)  Plata is a class action of inmates in California state prisons with

22  serious medical needs.  (Id. at ¶ 1.)  Inmates with serious medical conditions who are housed at

23  CSP-S, where plaintiff has been housed at all relevant times, is expressly covered by Plata.  (Id.

24

25      [3]  Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp.,
80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S.

26  1126 (1981).

at ¶ 5.)  Thus, plaintiff, a CSP-Solano inmate with serious medical needs, is necessarily a member of the Plata class.  (Id. at ¶ 5.) The Stipulation requires that all members of the class are to receive constitutionally adequate medical care consistent with applicable policies and procedures in effect as of February 2002.  (Id. at ¶ 4.)  Any disputes as to the adequacy of the policies and procedures are to be resolved pursuant to the dispute resolution procedures set forth in the Stipulation.  (Id. at ¶¶ 26-28.)  Disputes relative to the treatment of individual prisoners are to be pursued through the administrative grievance process, and then through private mediation with defendants.  (Id. at ¶ 30.)  These procedural requirements may be suspended only for inmates "requiring urgent medical care."  (Id. at ¶ 7.)

The Ninth Circuit has held that a plaintiff who is a member of a class action for equitable relief from prison conditions may not maintain a separate, individual suit for relief that is also sought by the class, but may pursue equitable relief that "exceeds," "goes beyond" or is not "covered" by the class action.  Crawford v. Bell, 599 F.2d 890 (9th Cir. 1979) (reversing district court's dismissal of plaintiff's claims for relief that exceeded those sought in a class action challenging overcrowding, thus permitting plaintiff's claims to correct unsanitary conditions in the institution's slaughterhouse, to require the law library to comply with applicable federal laws regarding the adequacy and availability of its source materials, and to commence a program of conjugal visits); accord, McNeil v. Guthrie, 945 F.2d 1163, 1166 n. 4 (10th Cir. 1991) ("class members may bring individual actions for equitable relief when their claims are not being litigated within the boundaries of the class action"); Rivera v. Bowe, 664 F. Supp. 708, 710 (S.D.N.Y. 1987) ("it would be improper to foreclose the parties from pursuing separate claims where such claims are not encompassed and litigable within the original action," citing Crawford); cf. Hiser v. Franklin, 94 F.3d 1287 (9th Cir. 1996) (reversing district court's grant of summary judgment on plaintiff's individual claim for equitable relief and damages based on defendants' refusal to photocopy plaintiff's legal documents, on the ground that the state court consent decree in a class action of all Alaskan inmates did not have preclusive effect).  In

1   contrast, individual damages claims may clearly be pursued.  "[T]he general rule is that a class

2   action suit seeking only declaratory and injunctive relief does not bar subsequent individual

3   damage claims by class members, even if based on the same events."  Hiser, 94 F.3d at 1291.

4          Significantly, the Ninth Circuit has not addressed whether, or to what extent, Plata

5   precludes a California inmate from pursuing an independent lawsuit for individual injunctive

6   medical relief, and the distinction drawn in Crawford has been cited only infrequently.  This

7   court has found only one published district court decision addressing the matter.  In Burnett v.

8   Dugan, 618 F. Supp. 2d 1232 (S.D. Cal. 2009), the court granted preliminary injunctive relief to

9   the plaintiff, who sought a court order requiring defendants to adhere to "chronos" setting forth

10  plaintiff's medically-indicated housing needs.  The district court noted that plaintiff was "not

11  seeking relief on behalf of all the other inmates in the CDCR," nor seeking "broad based reform

12  of the CDCR's medical practices which is the subject of the Plata litigation," but rather sought

13  relief that was "quite narrow and specific to Plaintiff."  618 F .Supp. 2d at 1237.  The court

14  rejected defendants' argument that plaintiff was "automatically precluded from seeking

15  injunctive relief for his medical related issues unless he first seeks relief as a member of the Plata

16  class," noting that defendants "cite to no authority that requires any plaintiff follow the Plata

17  procedures when they are attempting to enforce a specific medical treatment or doctor's order

18  related only to that individual plaintiff."  Id.  The court also relied on the exception set forth in

19  the Plata stipulation authorizing the suspension of its procedural requirements for inmates

20  "requiring urgent medical care."  Id.

21          Although some courts have applied reasoning similar to that articulated in Burnett

22  to permit Plata plaintiffs to pursue individual claims for injunctive relief, there is a divergence of

23  opinion among the unpublished district court decisions addressing this matter.  Some courts have

24  concluded that the plaintiff may not pursue *any* action for individual equitable relief during the

25  pendency of the Plata class action.  See e.g. Grajeda v. Horel, et al., 2009 WL 302708, *5-6

26  (N.D. Cal. 2009) (dismissing plaintiff's equitable claims to obtain, inter alia, a cane and leg brace

because such relief is encompassed by <u>Plata</u>; further concluding that dismissal of all equitable

claims required dismissal of all official-capacity claims); <u>Meyer v. Schwarzenegger</u>, 2008 WL

2223253, *14-15 (dismissing plaintiff's claim to obtain, inter alia, physical therapy for his

chronic knee condition because he was "precluded, as a member of the <u>Plata</u> class from seeking

injunctive relief in an individual action");[4] <u>Diaz v. Sisto</u>, 2010 WL 624618, *8 (E.D. Cal. 2010)

(plaintiff, a diabetic, claiming that the simultaneous lines for obtaining insulin and food were too

long to accomplish both, sought insulin injections twice a day and sufficient food, as well as a

court order modifying the time for providing treatment to insulin dependent diabetics; the court

dismissed "any claim for injunctive relief Plaintiff may have [because it] would fall under the

class action in <u>Plata</u>[,]" citing <u>Meyer</u>, supra, 2008 WL 2223253); <u>Jackson v. Lee</u>, 2009 WL

3047012 (N.D. Cal. 2009) (dismissing plaintiff's claims for equitable relief regarding the quality

of his personal medical care because subsumed by <u>Plata</u> and another class action).

        Other cases, like <u>Burnett</u>, have more narrowly precluded only those equitable

claims that seek broad, systemic changes targeted by the <u>Plata</u> class action.  <u>See</u> <u>e.g.</u> <u>Bovarie v.

Schwarzenegger</u>, 2010 WL 1199554, *7 (S.D. Cal. 2010) (dismissing plaintiff's claims for

injunctive relief seeking "system-wide, structural reform . . . [t]hat is precisely the objective of

the plaintiffs in <u>Plata</u> [,]" noting that the result may be different if plaintiff were seeking

"injunctive relief that is specific to his medical needs or the circumstances of his incarceration");

<u>Chess v. Dovey</u>, 2009 WL 2151998, *6 (E.D. Cal. 2009) (dismissing plaintiff's claims for "broad

injunctive relief requiring implementation of a pain management program for all chronic care

patients, the building of a diet kitchen, implementation of a physical therapy program and various

other system-wide changes in the medical care provided in California prisons" as well as "an

---

    [4]  Plaintiff asserts that the equitable claims were dismissed in <u>Meyer</u> because the plaintiff
therein sought to sue as a member of the <u>Plata</u> class action.  However, the <u>Meyer</u> plaintiff made
this assertion only in his initial complaint, which the court dismissed with leave to amend;
plaintiff thereafter filed, in his individual capacity, an amended complaint that set forth the
equitable claims dismissed by the court for the reasons set forth above.

1  order requiring defendants to come into compliance with Plata rulings") (internal quotations

2  omitted); Martinez v. California, 2008 WL 782861, *3 (E.D. Cal. 2008) (denying defendants'

3  motion to dismiss plaintiff's equitable claims based on plaintiff's representation that he was "not

4  seeking injunctive relief as to issues that were litigated in Plata," without prejudice to defendants

5  renewing their motion to dismiss if plaintiff filed an amended complaint that sought "injunctive

6  relief that is covered in the remedial plan for Plata"); see also, Tillis v. Lamarque, 2006 WL

7  644876, *9 (N.D. Cal. 2006) (finding that plaintiff's request for injunctive relief in the form of a

8  transfer to another institution was not barred by Plata because "[p]laintiff is seeking relief solely

9  on his own behalf"); Burnett v. Faecher, 2009 WL 2007118 (C.D. Cal. 2009) (denying

10  defendants' motion to dismiss plaintiff's claim for equitable relief (seeking immediate release

11  from prison) based on defendants' argument that the claim was subsumed by Plata, rejecting

12  defendants' "apparent" argument "that no inmate in the entire state can bring any Eighth

13  Amendment claim seeking equitable relief for inadequate medical care until the class action filed

14  in 2001 has been fully litigated").[5]

15        The court's review of these cases and the Plata stipulation supports the reasonable

16  construction set forth in Burnett, which this court will apply.  The court must next determine

17  whether any of plaintiff's claims for equitable and injunctive relief should be dismissed because

18  encompassed within the Plata class action.

19  ////

20

---

21        [5] Other cases address the matter too generally to provide precedent.  See e.g.
    Elliott v. Igbinosa, 2010 WL 5279978, *3 (E.D. Cal. 2010) (noting only generally plaintiff's
22  complaint that defendants failed to comply with the Plata court order, the court dismissed
    without leave to amend "[a]ny asserted requests for injunctive relief," with instructions to contact
23  class counsel);  White v. Kasawa, 2009 WL 498108, *2 (N.D. Cal. 2009) (dismissing plaintiff's
    request for injunctive relief that he "receive the medical monitoring to which he was entitled
24  under the rulings in Plata . . .[based on] a perceived failure to comply with the order in Plata");
    Choyce v. Saylor, et al., 2007 WL 3035406 (N.D. Cal. 2007) (denying plaintiff's unidentified
25  requests for injunctive relief because Plata "involves the same subject matter, adequacy of
    medical care, as plaintiff's claim here" and plaintiff had "fairly recently raised his claims using
26  the Plata mechanism, so they are known to class counsel").

1    Plaintiff's requests for "permanent injunctive relief" to "establish[] . . .

2   appropriate and effective means to prevent future such violations" and "to provide [plaintiff]

3   with all necessary and appropriate medical care" (FAC, at p. 21), appear to be encompassed

4   within the broad goals of Plata to provide constitutionally adequate medical care to all California

5   prisoners with serious medical needs.  Also encompassed within Plata is plaintiff's request that

6   the court "retain jurisdiction . . .until . . . there is a reasonable assurance that defendants will

7   continue to comply in the future."  (Id.)  These general requests for system-wide reform should

8   be dismissed.

9    In contrast are plaintiff's specific claims that he obtain, for his individual back

10   problems, sufficient medication, adequate physical therapy, reasonable accommodations in

11   performing institutional tasks (e.g., when standing in long lines), a current surgical assessment,

12   and surgery if recommended.  These are discrete, individualized claims for equitable relief that

13   are not encompassed within the Plata class action and should therefore proceed.

14    Accordingly, defendants' motion to dismiss plaintiff's claims for equitable and

15   injunctive relief should be granted only in part; this case should proceed on plaintiff's discrete,

16   individualized claims for equitable relief.

17    2. OFFICIAL CAPACITY

18    Defendants move to dismiss plaintiff's suit against defendants in their official

19   capacities based on the immunity from suit accorded states and state officials by the Eleventh

20   Amendment to the United States Constitution.  See e.g. Holley v. California Department of

21   Corrections, 599 F.3d 1108, 1111 (9th Cir. 2010), and cases cited therein.  This contention,

22   however, is premised on defendants' claim that Plata precludes plaintiff's claims for injunctive

23   relief, which this court has rejected.  Plaintiff correctly contends that he may proceed in his

24   Section 1983 claims against defendants in both their personal and official capacities, the latter

25   pursuant to the exception of Ex Parte Young, 209 U.S. 123 (1908).  Under Ex parte Young, "a

26   state official in his or her official capacity, when sued for injunctive relief, [is] a person under

13

§ 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 n.10 (1989) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985)).

Accordingly, defendants' motion to dismiss plaintiff's equitable claims against defendants in their official capacities should be denied.

### 3. <u>EIGHTH AMENDMENT</u>

Plaintiff alleges deliberate indifference to his serious medical needs, constituting cruel or unusual punishment in violation of the Eighth Amendment, against defendants Sisto, Traquina, Tan and Rohrer.  Defendants move to dismiss this claim to the extent that alleged facts are outside the statute of limitations or based on a theory of respondeat superior.

### a. <u>Statute of Limitations</u>

Plaintiff alleges that defendants have provided him with constitutionally inadequate medical care commencing with Dr. Traquina's initial evaluation of plaintiff on July 26, 2002.  (FAC, ¶ 25.)  Defendants contend that plaintiff is barred from alleging constitutional violations prior to September 10, 2003, based on the four-year limitations/tolling period accorded prisoner civil rights claims in California.  The only defendant against whom such allegations are made prior to this date is Dr. Traquina.

Section 1983 contains no statute of limitations.  Thus, federal courts apply the state's personal injury statute of limitations, subject to any state tolling provisions that are not inconsistent with federal law.  <u>Azer v. Connell</u>, 306 F.3d 930, 935-36 (9th Cir. 2002).  Effective January 1, 2003, the California statute of limitations for personal injury actions was extended from one year to two years.  Cal. Code Civ. Proc. § 335.1; <u>Maldonado v. Harris</u>, 370 F.3d 945, 954-55 (9th Cir. 2004).  However, the two-year statute of limitations does not apply retroactively, thus requiring application of the one-year limitations period to actions that accrued before January 1, 2003.  <u>Id</u>.

////

"Although state law determines the length of the limitations period, 'federal law determines when a civil rights claim accrues.'" Azer, 306 F.3d 936 (quoting Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). In addition, in California, the statute of limitations for incarcerated prisoners serving less than a life sentence is tolled for two years. Cal. Civ. Proc. Code § 352.1(a); Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000). "Accordingly, the effective statute of limitations for most prisoners is three years for claims that accrued before January 1, 2003 (one year limitations period plus two year statutory tolling), and four years for claims that accrued thereafter (two year limitations period plus two years statutory tolling)." Garcia v. Lunes, 2010 WL 1267128, *2 (E.D. Cal. 2010).

Plaintiff contends that "because [he] has alleged a continuing violation of his rights, [his] Eighth Amendment claim did not accrue until he filed suit in 2007." (Oppos. at pp. 12-13.) Plaintiff relies on two cases applying the continuing violation doctrine, the Seventh Circuit's decision in Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001), and the decision of the United States District Court for the Southern District of California in Evans v County of San Diego, 2008 WL 84249 (S.D. Cal. 2008).

In Heard, the court applied the continuing violations doctrine to find that plaintiff's deliberate indifference claim based on the refusal of defendants to treat his hernia accrued when defendants "learned he had a condition warranting medical attention yet unreasonably refused to provide that attention," and thereafter re-accrued each day that defendants refused to treat the condition, until the day that plaintiff was discharged from defendants' institution. Heard, 253 F.3d at 318. Characterizing plaintiff's claim as a "continuous series of events giv[ing] rise to a cumulative injury," the court found it judicially efficient for the plaintiff to "bring a single suit based on an estimation of his total injuries . . . [as] much preferred to piecemeal litigation despite the possible loss of accuracy." Id. at 319.

15

1          The United States District Court for the Southern District of California applied the

2    reasoning of Heard to the facts presented in Evans, supra, 2008 WL 84249.  In Evans, the

3    plaintiff injured his knee on January 27, 2004, while exiting the shower area of a housing unit in

4    a San Diego detention facility.  Although plaintiff obtained an x-ray in February 2004, and was

5    seen by several physicians throughout his incarceration, his treatment was conservative until he

6    received surgeries to his knee on July 8, 2005, and December 22, 2006.  Plaintiff filed his federal

7    civil rights action on April 13, 2006, alleging deliberate indifference to his medical needs by

8    delaying meaningful treatment.  The court in Evans rejected defendants' contention that

9    plaintiff's cause of action accrued on the date of his injury.  The court noted the Ninth Circuit's

10   construction of the continuing violations doctrine in other contexts, see id., at *11, citing, inter

11   alia, Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) ("[a] continuing violation is occasioned

12   by continual unlawful acts, not by continual ill effects from an original violation" (citation

13   omitted)), and Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982) ("mere

14   continuing impact from past violations is not actionable" (citation and internal quotations

15   omitted)), and applied the doctrine to plaintiff's deliberate indifference claim, reasoning that

16   "[t]he crux of his complaint is that he did not receive arthroscopic knee surgery while in the

17   sheriff department's custody," rather than "complaining about the discrete failures of doctors

18   who treated him," and thus "[i]t is the aggregation of the failures to treat Plaintiff that gives rise

19   to his claim."  Id. at *12.  The court applied the continuing violations doctrine to conclude that

20   the statute of limitations on plaintiff's claim commenced on (i.e., his cause of action accrued on)

21   the last day of his custody in the San Diego County Sheriff's Department (June 11, 2004), and

22   that plaintiff could therefore "reach back in seeking to prove liability and estimate damages[]. . ."

23   Id., citing Heard, 253 F.3d at 318.

24          More recently, within this district, the reasoning of Heard was accepted but found

25   inapplicable by the magistrate judge in Martin v. Woodford, 2010 WL 2773235 (E.D. Cal. 2010).

26   In Martin, the plaintiff claimed deliberate indifference to his serious medical needs based on the

failure of defendant physician to ensure that plaintiff obtained all of his prescribed heart

medications upon his transfer from Corcoran State Prison to Kern Valley State Prison ("KVSP").

Plaintiff saw defendant physician only once, on August 5, 2005, but the problems with plaintiff's

prescriptions occurred in August and September 2005, and plaintiff filed his action in March

2008.  In response to defendant's contention that plaintiff's claim was time-barred, plaintiff

argued, inter alia, that his claim was based on the continuing violation of state prison

overcrowding resulting in the failure/inability of defendant physician to transfer plaintiff back to

Corcoran which, unlike KVSP, had a pharmacy.  The court rejected this argument, not because of

a rejection of the continuing violations doctrine, but on the conclusion that it did not apply.  The

court reasoned that plaintiff failed to make allegations of overcrowding in his complaint, that his

complaint was limited to allegations within a discrete period with apparent resolution, and that

plaintiff had no further contact with defendant.  Thus, concluded the court, plaintiff failed to

allege any constitutional violation by defendant within the two-year limitations period.  Id.

          "Although the Ninth Circuit has not applied the continuing violation doctrine to

Eighth Amendment deliberate indifference claims," Martin, 2010 WL 2773235, at *5, the

allegations plaintiff makes herein are analogous to those made in Heard and Evans.  As in Heard

and Evans, plaintiff's case involves the claim that a prisoner health system, as administered by

various doctors and staff, consistently failed to provide adequate care for plaintiff's chronic and

deteriorating back condition.  Thus, application of the continuing violations doctrine to the

instant case appears appropriate.  Moreover, the impact of applying the doctrine to these facts is

di minimis, because it implicates only defendant Traquina (both as plaintiff's direct care provider

and in his capacity as CMO with continuing responsibility for plaintiff's care) and extends the

facts of this case little more than a year.

////

////

////

1    Accordingly, the court finds no statute of limitations bar to plaintiff's claims.[6]

2           b. Supervisorial Liability

3    Defendants seek to dismiss plaintiff's claims against defendants Sisto and

4    Traquina on the ground that they are improperly based on a theory of respondeat superior.

5           "Supervisory liability is imposed against a supervisory official in his individual

6    capacity for his own culpable action or inaction in the training, supervision, or control of his

7    subordinates, for his acquiescence in the constitutional deprivations of which the complaint is

8    made, or for conduct that showed a reckless or callous indifference to the rights of others."

9    Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) (citations and internal quotations omitted).

10   "Under Section 1983, supervisory officials are not liable for actions of subordinates on any

11   theory of vicarious liability.  A supervisor may be liable if there exists either (1) his or her

12   personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

13   between the supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black,

14   885 F.2d 642, 645-46 (9th Cir. 1989) (citations omitted).  Thus, "[a]lthough there is no pure

15   respondeat superior liability under § 1983, a supervisor is liable for the acts of his subordinates

16   'if the supervisor participated in or directed the violations, or knew of the violations [of

17   subordinates] and failed to act to prevent them.'"  Preschooler II v. Clark County School Bd. of

18   Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007), quoting Taylor v. List, 880 F.2d 1040, 1045 (9th

19   Cir. 1989).  Additionally, "[s]upervisory liability exists even without overt personal participation

20   in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself

21   is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

22   Hansen, 885 F.2d at 646, quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

23   ////

24

25          [6]  Thus, the court need not reach plaintiff's alternate contention that even "had the statute
     of limitations accrued at an earlier date, it would have been tolled while [he] pursued his
26   administrative remedies, beginning in September 2002."  (Oppos. at 13.)

1          On a motion to dismiss, the plaintiff "does not need to show with great specificity

2  how each defendant contributed to the violation of his constitutional rights.  Rather, he must state

3  the allegations generally so as to provide notice to the defendants and alert the court as to what

4  conduct violated clearly established law.  See Hydrick v. Hunter, 466 F.3d 676, 689-90 (9th Cir.

5  2006) (denying policy-making officials qualified immunity at the motion to dismiss stage based

6  on inferences that the officials played an instrumental role in the alleged abuses)."  Preschooler

7  II, at 1182.

8          Plaintiff identifies numerous factual allegations within the complaint that

9  Dr. Traquina (as one of plaintiff's physicians and then as CMO) both personally and directly

10  violated plaintiff's Eighth Amendment rights and then knowingly failed to prevent further

11  violations by his subordinates.  (Oppos., Dkt. No. 75, at p. 19, citing FAC, ¶¶ 25, 27, 30, 40, 42,

12  45, 49, 52, 53, 56, 64, 65, 70, 73, 75, 83, 97.)  These allegations are sufficiently specific to state

13  an Eighth Amendment claim against Dr. Traquina both by his own actions and by his knowing

14  ratification of the actions of his medical staff.

15          The same is not true of defendant Sisto.  The cited factual allegations state only

16  that "Sisto received a copy of the Director's Level Appeal Decision" on two of plaintiff's

17  administrative grievances.  (FAC, ¶ 73, 75.)  Plaintiff asks the court to infer Sisto's knowledge of

18  plaintiff's administrative grievances and the Director's Level responses thereto.  (Oppos. at

19  p. 19.)  However, these allegations fail to affirmatively link or connect the claimed deprivations

20  of medical care with Sisto's actions.  Vague and conclusory allegations of official participation in

21  civil rights violations are not sufficient to state a claim.  Ivey v. Board of Regents, 673 F.2d 266,

22  268 (9th Cir. 1982).

23  ////

24  ////

25  ////

26  ////

1    Accordingly, defendant Sisto should be dismissed in his individual capacity from

2  plaintiff's Eighth Amendment claim.[7]  However, Sisto (or his successor) should remain as a

3  defendant in this action in his official capacity only.[8]

4                    c.  Contours of Eighth Amendment Claim

5    Plaintiff's Eighth Amendment claim should proceed against defendants Traquina,

6  Tan and Rohrer, in both their personal and official capacities; plaintiff's claim against Traquina

7  includes the physician's conduct both individually and in his supervisory role as Chief Medical

8  Officer.  Plaintiff's claim against Sisto (or his successor) should proceed only in his official

9  capacity for injunctive relief.

10             4.  FIRST AMENDMENT RETALIATION CLAIM

11    Defendants contend that plaintiff has failed to plead the essential elements of a

12  First Amendment retaliation claim against defendants Traquina and Tan.

13    "[A] viable claim of First Amendment retaliation entails five basic elements:

14  (1) An assertion that a state actor took some adverse action against an inmate (2) because of

15  (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

16  First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

17  goal."  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  Direct and tangible harm will

18  support a First Amendment retaliation claim even without demonstration of a chilling effect on

19

20    [7]  At the hearing on this matter, plaintiff's counsel stated that defendant Sisto had

21  personal knowledge of plaintiff's medical condition and care, as demonstrated by a responsive
   letter he wrote to plaintiff's wife.  Counsel acknowledged that this allegation is not contained in

22  the First Amended Complaint; nor is the allegation set forth in plaintiff's opposition to the
   instant motion.  As the court stated at the hearing, plaintiff may seek leave of court to further

23  amend his complaint to add these allegations against Sisto in his individual capacity; however,
   such request will be carefully scrutinized pursuant to the factors set forth in Federal Rule of Civil

24  Procedure 15.  Additionally, as noted at the hearing, the court would need to consider the impact
   of Sisto's retirement.

25    [8]  Sisto's successor as CSP-S Warden is automatically substituted as a defendant in this

26  action for purposes of obtaining injunctive relief.  See Fed. R. Civ. P. 25(d)(1) (successor of
   public officer defendant named in his official capacity is automatically substituted as a party).

1   the further exercise of a prisoner's First Amendment rights.  Id. at 568 n.11.  "[A] plaintiff who

2   fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm"

3   as a retaliatory adverse action.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing

4   Rhodes, 408 F.3d at 568 n.11.  A plaintiff must plead facts which suggest that retaliation for the

5   exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's

6   conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Mere

7   conclusions of hypothetical retaliation will not suffice; rather, a prisoner must "allege specific

8   facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier

9   v. Dubois, 922 F.2d 560, 562, n.1 (10th Cir. 1990).

10          Against defendant Tan, plaintiff alleges in pertinent part that plaintiff was

11   prescribed methadone for pain management in November 2002 by orthopedic physician Kofoed

12   (FAC, at ¶  29); that Dr. Tan was aware of this fact (id. at ¶ 46); but that on September 27, 2007,

13   less than one month after plaintiff filed this suit, "Tan took Watson off his methadone pending an

14   MD assessment of need" (id. at ¶ 82), which plaintiff immediately challenged by submitting a

15   Form 7362 and administrative grievance (id.), but which Dr. Tan did not alter when he next

16   examined plaintiff on October 4, 2007 (id. at ¶ 83).

17          Against defendant Traquina, plaintiff alleges in pertinent part that in March 2006,

18   plaintiff obtained a chrono signed by Dr. Traquina "stating that Watson had 'severe' degenerative

19   disc disease in his lumbar spine and noting that he was not to be subjected to prolonged walking,

20   standing, or sitting for more than 30 minutes" (FAC, at ¶ 70); that plaintiff filed numerous

21   administrative grievances against the CSP-S medical staff while Dr. Traquina was his physician

22   and acting as CMO (see supra); that after plaintiff initiated this action on August 28, 2007 (id. at

23   ¶ 81), and filed a motion for injunctive relief (on August 14, 2008) challenging the fact that

24   plaintiff was being "forc[ed] . . . to wait from 40 minutes to an hour" before being provided his

25   pain medication (id. at ¶ 97; see also Dkt. Nos. 24, 29, 40), and after the court (on September 26,

26   ////

1   2008) ordered defendants to supplement their opposition to plaintiff's motion for injunctive relief

2   (FAC at ¶ 97; see also Dkt. No. 40), Dr. Traquina did the following:

> On October 9, 2008, after the Court ordered defendants to supplement their
> opposition to Watson's motion for injunctive relief, Dr. Traquina issued a new
> chrono for Watson, replacing the chrono that Dr. Chen had issued just over three
> months earlier.  Without personally evaluating Watson, Dr. Traquina removed the
> direction allowing Watson to obtain his narcotic medication after his diabetic
> medication and replaced the direction referring to no prolonged standing, sitting,
> or walking for greater than 30 minutes with a direction omitting the restriction on
> prolonged sitting.  Dr. Traquina also wrote a note in Watson's medical file stating
> that Watson has "mild" degenerative disc disease.  This characterization of
> Watson's medical condition directly contradicts the conclusion reached by the
> spinal specialists who evaluated Watson, Watson's primary care physicians, and
> Dr. Traquina's previous statements that Watson had "severe" degenerative disc
> disease.

10   (Id. at ¶ 97.)

11          Against both Dr. Tan and Dr. Traquina, plaintiff further alleges that "[d]efendants

12   retaliated against Watson for exercising his First Amendment rights, specifically by filing prison

13   grievances and this action complaining about the inadequate medical care that he received" (id. at

14   ¶ 115), demonstrated by "defendants' refusal to provide Watson with adequate medical care and

15   their actions reducing the level of care that he is receiving" (id. at ¶ 116), and "defendants'

16   obstruction of Watson's medical care and failure to provide Watson with chronos appropriately

17   addressing his serious medical needs" (id. at ¶ 121); that "[d]efendants' actions chilled Watson's

18   exercise of his First Amendment rights" (id. at ¶ 118); and that "[d]efendants' actions did not

19   reasonably advance a legitimate correctional goal" (id. at ¶ 119).

20          Plaintiff contends that these allegations adequately plead First Amendment

21   retaliation claims that:  (1) Dr. Tan, in retaliation against plaintiff for filing administrative

22   grievances and this lawsuit, reduced plaintiff's pain medication and ordered that it not be

23   renewed until plaintiff received a medical assessment of need; and (2) Dr. Traquina downgraded

24   plaintiff's diagnosis and chrono "because Watson filed prison grievances, a complaint, and a

25   motion for injunctive relief against CMO Traquina and the department which he directed."

26   (Oppos. at pp. 26-27.)

1      Defendants contend that neither of plaintiff's retaliation claims are sufficiently

2 alleged and, in addition, that plaintiff's claim is further inadequate against Dr. Traquina to the

3 extent that it is premised on the CMO's administrative review of plaintiff's grievances, citing

4 Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ( "[A prison] grievance procedure is a

5 procedural right only, it does not confer any substantive right upon the inmates"), and Ramirez v.

6 Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

7 entitlement to a specific grievance procedure).  (Dkt. No. 66, at 15-16.)

8      Pursuant to Rhodes v. Robinson, supra, 621 F.3d 1002, a plaintiff may, in an

9 amended or supplemental pleading, add newly exhausted claims based on related conduct that

10 occurred after the filing of the original complaint.  Plaintiff's retaliation claims against both

11 Dr. Tan and Dr. Traquina allege that each defendant made retaliatory decisions against plaintiff

12 *after* he initiated this action, that is, that "almost immediately after Watson filed this lawsuit,"

13 Dr. Tan reduced plaintiff's methadone and ordered that it not be renewed pending further

14 medical assessment (Oppos. at 27), and that "after the Court ordered defendants to supplement

15 their opposition to Watson's motion for injunctive relief," Dr. Traquina issued an unfavorable

16 chrono (id.).

17      In addition, while plaintiff has only generally alleged that his First Amendment

18 rights were chilled by this allegedly retaliatory conduct (FAC, ¶ 118), it is clear that plaintiff is

19 also alleging that he suffered direct and tangible harm (downgrading of plaintiff's medical care)

20 as a result of defendants acting in retaliation against plaintiff for pursuing his First Amendment

21 rights.  These allegations are sufficient to state a First Amendment retaliation claim.  Rhodes,

22 408 F.3d at 568 n.11 ("harm that is more than minimal will almost always have a chilling

23 effect").

24      The court finds plaintiff's retaliation claims, and the facts underlying these claims,

25 sufficiently related to plaintiff's initially-alleged claims to authorize their incorporation and

26 continued viability in plaintiff's First Amended Complaint.  Plaintiff's retaliation claims are, in

1   essence, "subsequent factual developments in his case," <u>Rhodes</u>, 621 F.3d at 1106, warranting

2   their inclusion in a "supplemental complaint, regardless of the label attached to it. . . ." <u>Id.</u>, citing

3   Fed. R. Civ. P. 15(d).  This result is underscored by the reality that some evidence may support

4   both plaintiff's Eighth and First Amendment claims, e.g., plaintiff's allegations in support of his

5   retaliation claims that his prescription for methadone was suspended, that his chrono was

6   changed to require that he wait a longer period to obtain pain medication, and that physicians

7   inappropriately downgraded the severity of his back condition, also remain material to plaintiff's

8   claim that defendants were, and continue to be, deliberately indifferent to his serious medical

9   needs in violation of the Eighth Amendment.  Finally, defendants do not contend that plaintiff

10  has failed to administratively exhaust his retaliation claims.

11          Accordingly, defendant's motion to dismiss plaintiff's First Amendment

12  retaliation claims against defendants Dr. Tan and Dr. Traquina should be denied.  These claims

13  should proceed against defendants in both their individual capacities (to the extent that plaintiff

14  seeks damages) and official capacities (insofar as plaintiff seeks prospective equitable relief).

15          C.  <u>AMERICANS WITH DISABILITIES ACT AND SECTION 504</u>

16          Defendants contend that plaintiff's FAC fails to state a claim under the Americans

17  with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

18  Defendants argue that plaintiff has failed to allege that he was excluded from participating in, or

19  was otherwise discriminated against with regard to, any services, programs, or activities at CSP-S

20  on the basis of a disability.  Rather, argue defendants, plaintiff is only challenging the quality of

21  his medical care, as demonstrated by the allegations of plaintiff's complaint that he frequently

22  obtained medical services but not of the type or quality that he sought.

23          In support of this argument, defendants have submitted the Declaration of N.

24  Grannis, CDCR Chief of the Inmate Appeals Branch. (Dkt. No. 66-2, at pp. 2-6, and attachments

25  thereto.)  Plaintiff moves to strike this evidence.  (Dkt. No. 76.)  The court addresses plaintiff's

26  motion to strike before turning to the merits of this issue.

1        1. <u>MOTION TO STRIKE</u>

2        Plaintiff moves to strike the Declaration of N. Grannis filed in support of

3   defendants' motion to dismiss.  The Grannis Declaration ("Grannis Decl.") provides summaries

4   of four of plaintiff's administrative grievances alleging violations of the ADA, and concludes

5   that none of those "filed . . . at the Director's (Third) Level [were] accepted for review, relative to

6   his claims against [these] defendants . . . for violation of the Americans with Disabilities Act[,]"

7   and thus plaintiff "never exhausted his available administrative remedies with respect to the

8   ADA claims. . ." (Dkt. No. 66-2, at ¶ 6).  Defendants rely on this information in support of their

9   argument, discussed below, that plaintiff fails to state a claim under the ADA or Section 504,

10  because his administrative grievances asserting "discrimination" were in fact premised on the

11  alleged failure of defendants to provide plaintiff with adequate medical care, not on denying

12  plaintiff access to programs or activities as a result of his disability.  (Dkt. No. 66, at pp. 17-18.)

13       Plaintiff contends that this evidence is inadmissible and may not be considered by

14  the court without converting defendants' motion to dismiss into a motion for summary judgment.

15  Plaintiff contends that the content of the declaration "exceeds the scope of the complaint to the

16  extent it purports to represent the entire universe of Watson's ADA grievances," and "is clearly

17  not a matter of public record."  Plaintiff relies on the legal standards previously cited in support

18  of the court's consideration of defendants' motion to dismiss, as well as <u>Lee v. City of Los</u>

19  <u>Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001), for the rule that the court "may not consider any

20  material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  (Dkt. No. 76, at 1.)  Plaintiff

21  requests the opportunity to file supplemental briefing should the court deny his motion to strike.

22       Significantly, defendants move to dismiss plaintiff's ADA and Section 504 claims

23  on substantive grounds, not because plaintiff may have failed to exhaust his administrative

24  remedies.  Because, for the reasons set forth below, the court finds that defendants' motion has

25  merit on the grounds asserted, the information provided by the Grannis declaration is both

26  superfluous and inapposite.  Additional briefing is not necessary.

1    Accordingly, the court will grant plaintiff's motion to strike.

2    2. MERITS

3    The ADA and Rehabilitation Act preclude discrimination on the basis of

4    disability, and apply to inmates and parolees in the state correctional system.  Armstrong v.

5    Wilson, 124 F.3d 1019, 1022-24 (9th Cir. 1997).  In order to state a claim under Title II of the

6    ADA, a plaintiff must allege that:  "(1) he 'is an individual with a disability;' (2) he 'is otherwise

7    qualified to participate in or receive the benefit of some public entity's services, programs, or

8    activities;' (3) he 'was either excluded from participation in or denied the benefits of the public

9    entity's services, programs, or activities, or was otherwise discriminated against by the public

10   entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his]

11   disability.'"  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting

12   Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).  Similarly, to state a claim

13   under Section 504 of the Rehabilitation Act, a plaintiff must allege that "(1) he is an individual

14   with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the

15   benefits of the program solely by reason of his disability; and (4) the program receives federal

16   financial assistance."  Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001); O'Guinn

17   v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007).[9]

18   As framed by the First Amended Complaint, plaintiff alleges that he sought ADA

19   status pursuant to an administrative grievance filed March 24, 2003, and was "granted" such

20   status on April 19, 2003, based on the finding that plaintiff was not capable of prolonged

21   standing, walking, or sitting for longer than 30 minutes.  (FAC, at ¶ 35.)  Plaintiff alleges

22

23        [9] There is no significant difference in the analysis of rights and obligations created by
24   the Rehabilitation Act and the ADA.  See, e.g., Vinson v. Thomas, 288 F.3d 1145, 1152 (9th Cir.
     2002), citing Zukle v. Regents of the University of California, 166 F.3d 1041, 1045 n.11 (9th Cir.
25   1999); see also Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d 879, 884 (9th Cir. 2004).
     Claims made pursuant to the Rehabilitation Act are assessed according to the same standards
26   applied under the ADA.  See 29 U.S.C. § 794(d), 791(g) (applying ADA standards to
     Rehabilitation Act).

1   generally that he is "a qualified individual with a disability as defined in the ADA and qualified

2   as an individual with a disability as defined in section 504."  (Id. at ¶ 126.)  Finally, plaintiff

3   alleges:

> As a result of defendants' policies and practices which result in inadequate
> medical care, Watson has been excluded from the substance abuse programs,
> education, vocation, work furlough and work credit, recreation, dining hall and
> other meals, yard time, visiting, classification, discipline, telephone, emergency
> procedures and/or other programs and services for which he is otherwise qualified
> that defendants provided to individuals under their custody and control, thereby
> subjecting him to discrimination in violation of the ADA and section 504.

8   (Id. at ¶ 127.)

9           As framed in his opposition to the motion to dismiss, plaintiff states more

10  narrowly that he is alleging "discriminatory treatment of his spinal injury by reason of his

11  disability " (Oppos., at p. 29 n.12, and related text) "by [defendants] disregarding, revoking,

12  and/or failing to issue chronos confirming that he is unable to sit, stand, or walk for more than

13  thirty minutes and permitting him to receive his pain medication immediately after the diabetics

14  receive their medication" (Oppos. at 28) or, more succinctly, "by denying him adequate access to

15  CSP-Solano's prescription services" (id. at 24).

16          Even if plaintiff's back condition and pain are construed as a "disability" within

17  the meaning of the ADA and Section 504,[10] he has failed to articulate a cognizable discrimination

18  claim under those statutes.  This conclusion is underscored by plaintiff's effort, in his opposition,

19  to narrow the broad allegations of his complaint that he was "excluded" from a significant range

20  of prison programs, services and activities (FAC, at ¶ 127 ) to the singular allegation that

21  defendants have failed to consistently issue and adhere to medical chronos limiting plaintiff's

22  ////

23  _____

24      [10]  According to the ADA, an individual is disabled if that individual "(1) has a physical
    or mental impairment that substantially limits one or more of the individual's major life
25  activities; (2) has a record of such an impairment; or (3) is regarded as having such an
    impairment."  Deppe v. United Airlines, 217 F.3d 1262, 1265 (9th Cir. 2000); see also 42 U.S.C.
26  § 12102(2); 29 C.F.R. § 1630.2(g); Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d 879,
    884 (9th Cir. 2004).

1  wait for his pain medication.  As refined, this allegation challenges the medical assessments

2  underlying plaintiff's chronos;[11] it does not state a claim of discrimination based on disability.

3         Plaintiff's effort to characterize his claim as one of disparate access to prescriptive

4  medication is unavailing.  Disparate prisoner treatment cases premised on cognizable ADA

5  claims are premised on institutional policies or practices that could have a discriminatory impact

6  on prisoners who share plaintiff's "disability."  See, e.g., Peacock v. Terhune, 2002 WL 459928,

7  *2 ( E.D. Cal. 2002) (finding ADA claim based on plaintiff's allegations that new policy

8  requiring paralyzed inmates to obtain their supplies at another location, resulting in difficulty

9  making "med call" due to paraplegia and need to perform "manual bowel care"); McNally v.

10 Prison Health Services, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (finding ADA claim based on

11 plaintiff's allegations that jail discriminated against him based on his HIV-positive status by

12 denying him immediate access to prescribed medications, as compared to non-HIV detainees

13 who had immediate access to their prescriptions for other illnesses).  In contrast, courts

14 construing claims similar to plaintiff's have concluded that such allegations do not come within

15 the provisions of the ADA or Section 504.  See, e.g., McCoy v. Los Angeles County Sheriff's

16 Dept., 2010 WL 330235, *9 (C.D. Cal. 2010) (finding that plaintiff's claims of failure to

17

18        [11] In summary, plaintiff received several medical chronos requiring that he not be
19 subjected to prolonged standing, walking or sitting for longer than thirty minutes at a time.
   (FAC, at ¶ 35 (April 19, 2003), ¶ 45 (November 17, 2003), ¶ 68 (October 19, 2005), ¶ 70 (March
20 2006); see also id. at ¶ 44 (issued November 6, 2003, exempting plaintiff from "getting down" in
   "alarm situations").  After filing his initial complaint in this action in August 2007 (FAC, at ¶
21 81), and experiencing a fall in November 2007 (id. at ¶ 85), plaintiff filed three administrative
   grievances complaining about the length of his wait to receive his pain medication (see id. at ¶ 87
22 (filed May 27, 2008, and complaining of waiting from forty minutes to an hour to receive his
   medication), ¶ 88 (filed June 2, 2008, complained of being required to sit and wait for his
23 medication), ¶ 89 (filed June 18, 2008, "complaining that his chrono had been improperly
   revoked and requesting that he be granted an appointment with his primary care physician in
24 order to clarify that he could not stand, walk, or sit for sixty minutes" (emphasis added)).  The
   June 2, 2008 chrono issued by Chen required a waiting time of no more than 30 minutes, based
25 on limitations of sitting, standing and walking to 30 minutes.  (Id. at ¶ 90.)  The October 9, 2008
   chrono issued by Dr. Traquina maintained the limitations in standing and walking but provided
26 for unlimited sitting.  (Id. at ¶ 97.)  At the hearing, defendants' counsel stated that the operative
   chrono provides for a waiting time of up to 60 minutes.

1   accommodate his disability were instead claims of medical negligence).  As summarized by the

2   court in McCoy, the following similar cases reach the same result:

> 3   [T]o the extent that plaintiff may be purporting to allege that the [defendant
>     county sheriff's department] violated the ADA or the Rehabilitation Act by failing
> 4   to provide adequate medical treatment for his disabilities, such a claim does not
>     fail within the provisions of either the ADA or § 504 of the Rehabilitation Act.
> 5   See, e.g., Alexander v. Tilton, 2009 WL 464486, at *7 [] (E.D. Cal. Feb. 24,
>     2009) (collecting cases and noting that "other courts have found that the ADA and
> 6   [the Rehabilitation Act] do not create a federal cause of action for prisoners
>     challenging the medical treatment provided for their underlying disabilities" );
> 7   Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005) (holding that claims
>     pursuant to the ADA or the Rehabilitation Act "cannot be based on medical
> 8   treatment decisions"); Grzan v. Charter Hosp. of Northwest Indiana, 104 F.3d
>     116, 121-22 (7th Cir. 1997) ("Allegations of discriminatory medical treatment do
> 9   not fit into the four-element framework required by section 504 [of the
>     Rehabilitation Act].").

10

11   McCoy, supra, at *9.

12          Accordingly, plaintiff's claims under the Americans with Disabilities Act and

13   Rehabilitation Act should be dismissed, as should the institutional defendants named in these

14   claims, viz., the California Department of Corrections and Rehabilitation and California State

15   Prison-Solano.

16   IV.  SUMMARY

17          For the foregoing reasons, this court grants plaintiff's motion to strike the

18   Declaration of N. Grannis filed in support of defendants' motion to dismiss.  In addition, the

19   court recommends that plaintiff's claims made pursuant to the ADA and Section 504 be

20   dismissed, which in turn requires the dismissal of defendants California Department of

21   Corrections and Rehabilitation and California State Prison-Solano.  It is the recommendation of

22   this court that this action should proceed only on plaintiff's civil rights claims pursuant to

23   42 U.S.C. § 1983, specifically:  (1) plaintiff's Eighth Amendment claims against defendants

24   Traquina, Tan, Rohrer and Sisto, and (2) plaintiff's First Amendment claims against defendants

25   Traquina and Tan.  All defendants are sued in both their individual capacities (to the extent that

26   plaintiff seeks damages) and official capacities (insofar as plaintiff seeks prospective equitable

relief), with the exception of defendant Sisto (or his successor), who is sued only in his official capacity.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion to strike defendants' evidence (Dkt. No. 76) is granted.

Further, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion to dismiss (Dkt. No. 66) plaintiff's First Amended Complaint should be granted in part and denied in part;

2.  Plaintiff's claims made pursuant to the Americans with Disabilities Act and Rehabilitation Act should be dismissed;

3.  Defendants California Department of Corrections and Rehabilitation and California State Prison-Solano should be dismissed; and

4.  This action should proceed on plaintiff's First and Eighth Amendment claims pursuant to 42 U.S.C. § 1983, against defendants Traquina, Tan, Rohrer and Sisto, as set forth herein.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are

////

////

////

////

////

30

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  February 11, 2011

4

5                                                                                        _____

6                                                                                        KENDALL J. NEWMAN
                                                                                         UNITED STATES MAGISTRATE JUDGE
7  wats1871.amd.f&r

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26